# Graham, Appellant, *v.* Philadelphia.

*Negligence—Conflict of testimony—Question for jury.*

Whenever there is a conflict of testimony or for any cause there is a reasonable doubt as to the facts, or as to the inferences to be drawn from them, negligence is always a question for the jury.

*Negligence—Municipality—Hole in street—Duty of driver.*

It cannot be laid down as an inflexible and unvarying rule of law that the driver of a wagon in the streets of a large city must keep his eyes constantly fixed on the roadbed, and is affected with notice of every defect therein which can be detected by doing so. He must, however, keep his eyes open, and his wits about him, and must look where he is driving. The omission of this plain duty is negligence, and bars recovery for any injury to which it contributes.

In an action against a city to recover damages for injuries to a horse and wagon caused by the horse stepping into a hole in the highway, the case is for the jury where the evidence for plaintiff tends to show that the wagon had just crossed a steam railroad's tracks, that the horse was being driven at a moderate gait with a tight rein, that the driver was looking ahead, and did not see the hole, that the hole was not more than a foot in diameter at the surface of the asphalt, that it was surrounded, if not partially covered by cinders, that it was much larger below the surface, that there was no barrier or danger signal near it, and that it had been in the condition in which it was on the day of the accident for four or five weeks prior thereto.

Argued Oct. 24, 1901. Appeal, No. 160, Oct. T., 1901, by plaintiff, from order of C. P. No. 3, Phila. Co., Sept. T., 1899, No. 520, refusing to take off nonsuit in case of Michael Graham *v.* City of Philadelphia. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.    Reversed.

Trespass to recover damages for injuries to a horse, harness and wagon.

The facts appear by the opinion of the Superior Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Francis Fisher Kane*, with him *W. Alexander Robinson, D. Stuart Robinson* and *James M. Beck*, for appellant.—The case was for the jury: Born v. Allegheny, etc., Plank Road Co., 101 Pa. 334; Conyngham v. Erie Electric Motor Co., 15 Pa. Superior Ct. 573; Kellow v. Scranton, 195 Pa. 134; Ryan v. Ardis, 190 Pa. 66.

*Chester N. Farr, Jr.*, assistant city solicitor, with him *John L. Kinsey*, city solicitor, for appellee.—It is idle for one to say that he looked and did not see, when if he had looked he must have seen and should have avoided danger: Carroll v. Penna. R. R. Co., 12 W. N. C. 348; Myers v. B. & O. R. R. Co., 150 Pa. 386; Holden v. Penna. R. R. Co., 169 Pa. 1; Hentz v. Somerset Boro., 2 Pa. Superior Ct. 225.

Where the condition of the street is such that persons using the same could have seen it, if they had been giving attention to it, they are guilty of contributory negligence in not noticing the same: Dehnhardt v. Philadelphia, 15 W. N. C. 214; Philadelphia v. Smith, 23 W. N. C. 242; Barnes v. Sowden, 119 Pa. 53; Buzby v. Phila. Traction Co., 126 Pa. 559; Dickson v. Hollister, 123 Pa. 421; Sumis v. Phila. Traction Co., 181 Pa. 268; Shallcross v. Phila., 187 Pa. 143.

OPINION BY RICE, P. J., February 14, 1902:

This was an action of trespass brought to recover damages for injuries to the plaintiff's horse, harness and wagon caused by the horse stepping into a hole in the highway. The plaintiff's son, aged eighteen years, was driving the horse at a jog trot northward on the right-hand side of Twelfth street in the city of Philadelphia. He had crossed the railroad tracks on Washington avenue, an intersecting street, and at a point distant a length and a half of the horse and wagon from the Washington

avenue curb the horse stepped into the hole. The driver testified, that he was driving carefully, holding a tight rein on the horse, that he was looking "right ahead," that he did not see the hole, or anything to indicate to him that there was a hole, and that he did not know of its existence. He lived in another part of the city but admitted that he had driven in the street before and had passed the place "every once in a while." Another witness testified that the hole had been there four or five weeks. "Then it was filled with cinders. Then it was washed out again and the asphalt was undermined about four feet, and the water was continually flowing at the time of the accident. . . . The hole, I judge, was eight or ten inches; that is, the asphalt, and it was all undermined, like a cake on top." Another witness testified : " The hole seemed to me to be about a foot across and underneath it when I looked there were cinders, and the cinders seemed to be washed out from underneath the asphalt, making a pretty good sized hole underneath, but on top it was not very large." Another witness testified : " The hole the horse went into had been filled with cinders on top of it and cinders underneath. The water was running through the cinders underneath when I looked down the hole after we got the horse out." In another part of his testimony he said : " It was only a small hole in the asphalt, but underneath it was all hollowed out like a balloon." We quote further from the testimony of the driver: " Q. You could see a hole, could n't you, a foot wide? A. The hole must have had cinders in it, so you would n't notice it. There were cinders all around it. . . . There was nothing to call my attention that there was a hole there. Q. Do you know there was a hole there ? A. There was a hole there, but it might have been filled up with cinders and you never know it. Q. You noticed those cinders when you drove by there before ? A. I don't remember noticing any cinders. Q. Don't you look where you are driving usually ? A. I look where I am driving, but a little hole like that you would never notice, with cinders laid across it."

" That the reasonable care which the law exacts of all persons in whatever they do involving the risk of injury requires travelers, even on the footways of public streets, to look where they are going, is a proposition so plain that it is not often called for adjudication : " Robb v. Connellsville Borough, 137

Pa. 42.   This statement of the law has been cited with approval in many later cases, and it is as applicable to the driver of a vehicle as to pedestrians.   The question for our consideration is, whether the evidence so clearly established the negligence of the driver in this regard as to warrant the court in determining it as a matter of law.   As already shown the driver testified that he was driving at a moderate gait, with a tight rein, and that he was looking straight ahead and did not see the hole.   To sustain the judgment of nonsuit we must declare as matter of law that he omitted some other duty, which is not claimed, or as matter of fact that this testimony is incredible.   The argument in support of the judgment is based on the latter ground.   We recognize the principle that it is in vain for one to say that he looked and did not see, when if he had looked he must have seen, and that in such a case it is not the duty of the court to submit to the jury the question whether he looked and failed to see the danger.   This rule has most frequently been applied in railroad crossing cases, but it is of general application as is also the doctrine thus stated by Mr. Justice MITCHELL: "Carroll v. Penna. Railroad Co., 12 W. N. C. 348, and the decisions which have followed it are sound in principle, and experience has confirmed the wisdom of the rule there adopted.   It will not be relaxed nor pared down by exceptions. But it is a rule which, in its nature, is applicable only to clear cases.   If, on the evidence, there is any doubt of the plaintiff's negligence, the case must go to the jury:" McNeal v. Pittsburg and Western Railway Co., 131 Pa. 184.   Again in Whitman v. Penna. R. R. Co., 156 Pa. 175, the same learned justice said: "But it is a rule which in its nature is applicable only to clear cases, to those which practically only admit of one view . . . . If the facts are undisputed and the inference from them clear, it will be the duty of the court to declare the law, as was done in R. R. Co. v. Feller, but in general the question is for the jury."   It is unnecessary to cite the numerous decisions both of the Supreme Court and of this court, in which this statement of the scope of the rule enunciated in Carroll v. Railroad Co. has been recognized and applied.   It is applicable here.   The driver had but just crossed the railroad tracks, which necessarily required his attention.   The opening of the hole in the street surface was small; at the most not more than a

foot in diameter, and according to some of the witnesses not more than eight or ten inches. It was surrounded, if not partially covered by cinders. No work was being done on the street, and no barrier or danger signal was in place. In short, if the witnesses are to be believed, there was nothing to induce extraordinary vigilance, or to call a driver's attention to the fact that there was a hole there. That a pedestrian might, and, perhaps, ought to have seen it before stepping into it is not the conclusive test in this case. Nor is the fact that one knowing of the existence of the hole could see it from the opposite side of the street, decisive of the question of the driver's negligence. That a driver of ordinary prudence, using due care necessarily would have seen that there was a dangerous hole at that point is not the necessary and unavoidable inference to be drawn from the facts, in the face of his positive testimony that he did not see it, and of his explanation. He did not testify to an impossibility. A jury might have been convinced by his manner upon the witness stand that he told the truth. It is to be borne in mind that in a street of a large city traversed by trolley cars there are other perils to be guarded against, and much more likely to be encountered, and therefore to be expected, than such a pitfall in the traveled way as is described in the testimony in this case. The driver of a vehicle must be on the lookout for them and cannot, under all circumstances and in every place, give his sole and undivided attention to the roadbed. It is impossible, therefore, to lay it down as an inflexible and unvarying rule of law that he must keep his eyes constantly fixed on the roadbed and is affected with notice of every defect therein which can be detected by doing so. He must, however, keep his eyes open and his wits about him and must look where he is driving. The omission of this plain duty is negligence and bars recovery for the injury to which it contributed. But there must be no doubt or uncertainly about the facts attending the accident in order to justify the courts in treating the question of contributory negligence as one of law. Whenever there is a conflict of testimony or for any cause, there is a reasonable doubt as to the facts, or as to the inferences to be drawn from them, negligence is always a question for the jury. We are all of opinion that this case is clearly within that rule.

Judgment reversed and venire facias de novo awarded.