## Smith *v.* Jackson Township, Appellant.

*Negligence—Conflicting statements of witness—Province of jury.*

It is for the jury to determine what a witness means when he uses language warranting distinct and opposite inferences. They must determine his meaning not only from his words, but from his manner and all the surrounding circumstances, and find whether he was careful or careless.

Seeming inconsistencies in a party's testimony do not necessarily lead to the conclusion that he is untruthful; nor, where his testimony relates to a subject as to which the burden of proof is on the opposite party, will they, ordinarily, warrant the court in instructing the jury to reject those parts of it which make in his favor, and to base their verdict on those parts of it which seem to make against him. Under these circumstances the case must go to the jury, whose province it is to reconcile conflicting statements, whether of the same or different witnesses, or to draw the line between them and say which shall prevail.

*Negligence—Bridge—Hole in bridge—Contributory negligence—Province of court and jury.*

In an action against a township to recover damages for personal injuries, it appeared that while plaintiff was driving over a bridge belonging to the township, his horse stepped through a hole about five inches wide and between fifteen and twenty inches long, and plaintiff was thrown from his wagon and injured. The hole had been in the bridge for about three weeks before the accident, and plaintiff had observed it as he went to and fro daily, but on the day preceding a person, without the direction or knowledge of the supervisors, had nailed a board over the hole, a repair of which the plaintiff had notice when first crossing the bridge on the morning of the accident. This board was removed and the hole uncovered before his return, which was an hour or two later. A number of milk cans in the wagon prevented the use of a seat, and the plaintiff was riding on one of the cans. The plaintiff testified that he was looking at his "horse and the road and straight ahead," but did not notice the hole, but in another portion of his testimony he used language in describing the accident from which the de-

fendant claimed that an inference could be drawn, that he must have seen the hole if he had been looking, but the language was also consistent with an inference that he meant no more than that he could have seen the hole if he had looked for it.   *Held* that the case was for the jury.

While it is duty of a driver as it is of a pedestrain, to look where he is going, yet it cannot be laid down as an inflexible and unvaried rule of law that he must keep his eyes constantly fixed on the roadbed, and is affected with notice of every defect therein great or small which can be detected by doing so.

*Negligence—Damages—Charge of court—Medical services—Evidence.*

While in a negligence case a plaintiff cannot recover for medical expenses where he has offered no evidence that such expenses have been incurred, a verdict and judgment for plaintiff will not be disturbed where the court charges that the jury must confine themselves to " direct expenses incurred," and there is nothing to indicate from the amount of the verdict or other circumstances that the jury included medical expenses as to which no testimony had been offered.

Argued March 9, 1904.   Appeal, No. 5, Feb. T., 1904, by defendant, from judgment of C. P. Tioga Co., Jan. T., 1901, No. 2, on verdict for plaintiff in case of Alexander Smith v. Jackson Township.   Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.   Affirmed.

Trespass to recover damages for personal injuries.   Before NILES, P. J.

The facts appear from the opinion of the Superior Court. See also 20 Pa. Superior Ct. 337.

The defendant presented, inter alia, these points :

9. The court instructs you (the jury), that all of the evidence regarding the board being over the hole in the bridge prior to the time of the alleged injury is withdrawn from your consideration, and you are instructed that you must not regard or consider the same for any purpose whatever in reaching or making your verdict.   *Answer :*  We decline to affirm that point as stated.   But we do say to you in the language of the Superior Court, when the case was first before it, " It follows that the fact that the plaintiff had noticed when crossing the bridge in the morning that a board had been nailed over the hole, did not relieve him from the duty to look where he was driving, and it was error to permit the jury to find that it relieved him from that duty."   We add to this that the fact he saw the board over the hole in the morning did not relieve him

from his duty in looking ahead and passing over the bridge with the usual care and caution. [4]

10. Under all the evidence in this case the verdict of the jury must be for the defendant. *Answer:* We refuse that point. [6]

Plaintiff presented this point:

Counsel for the plaintiff respectfully ask the court to charge the jury that if they find for the plaintiff, they should in estimating damages, allow for the direct expenses incurred, for the pecuniary damages the plaintiff has sustained and is likely to sustain during the remainder of his life, and making allowance for the pain and inconvenience, bodily and mental, necessarily resulting from the injury, and likely to result from it, considering as to future earnings of the plaintiff only their present worth. *Answer:* That point we affirm. And what we mean by " present worth " is this : This man according to the Carlisle tables, if you were to rely upon them, might live eighteen years ; he swears his services were worth from $200 to $300 a year. You would not multiply that by eighteen, but would give him such a sum as you found the present worth of his earnings to be. [1]

The court charged in part as follows :

[We may state as a general rule in a case such as this that the damages recoverable include not only the bodily and mental pain and suffering but reimbursement for actual expenditures and for liability incurred for medical treatment, and nursing and compensation for loss of earnings and for loss of earnings in the future. The damages in a case such as this should only be compensatory damages, that is, proper compensation for the injuries sustained.] [2]

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Errors assigned* were (1, 2, 4, 6) above instructions, quoting them.

*E. H. Owlett* and *Norman H. Ryan*, with them *D. W. Baldwin* and *Walter Sherwood*, for appellant.—There is no evidence that the services of Dr. Hauser were paid for or that their value

was agreed upon, or that they were of any value whatever; hence appellant contends that the court erred in instructing the jury that they could consider the expenses incurred by the plaintiff for medical attendance: Brown v. White, 202 Pa. 297; McKenna v. Gas Co., 198 Pa. 31.

When plaintiff drove upon the bridge he occupied a perilous seat on his wagon; he was about to encounter a known danger; his care and vigilance should have been commensurate with the risk, and failure to exercise such vigilance was gross negligence: Smith v. Jackson Twp., 20 Pa. Superior Ct. 337; Lynch v. Erie, 151 Pa. 380; Shallcross v. Philadelphia, 187 Pa. 143; Graham v. Philadelphia, 19 Pa. Superior Ct. 292; Heiss v. Lancaster, 203 Pa. 260; Decker v. East Washington Borough, 21 Pa. Superior Ct. 211; Sellers v. Union Traction Co., 21 Pa. Superior Ct. 5; Bland v. Ry. Co., 13 Pa. Superior Ct. 93.

The question of defendant's negligence was for the court, for the reason that it is not disputed in the evidence, and his own testimony establishes it: Hill v. Township of Tionesta, 146 Pa. 11; Rotsell v. Borough of Warren, 10 Pa. Superior Ct. 283; Hentz v. The Borough of Somerset, 2 Pa. Superior Ct. 225; Haven v. Pittsburg & Allegheny Bridge Company, 151 Pa. 620; The Delaware, Lackawanna & Western Railroad Co. v. Cadow, 120 Pa. 559; Barnes v. R. Sowden, 119 Pa. 53; Bailey v. Brown Township, 190 Pa. 530; Brendlinger v. New Hanover Township, 148 Pa. 93; Robb v. Connellsville Borough, 137 Pa. 42.

*H. F. Marsh,* with him *F. E. Watrous* and *S. F. Channell,* for appellee.—The testimony in relation to the board was beyond any question admissible for the purpose of showing the exact condition of the highway the last time the plaintiff saw it before the accident. It was immaterial to him by whom the repair was made. He saw the bridge as it actually was, and his actions and his consequent legal responsibility were precisely the same as if the supervisors nailed the board: Chilton v. Carbondale, 160 Pa. 463; Kingston v. Gibbons, 5 Cent. Repr. 222.

The general rule that the case is for the jury where either the facts or the reasonable inferences to be drawn from them

are in doubt, is established by so many decisions that a reference to many of them would be an affectation of industry and an imposition on the court: Graham v. Philadelphia, 19 Pa. Superior Ct. 292; Isemenger v. York Haven Water & Power Co., 206 Pa. 591; Strader v. Monroe County, 202 Pa. 626.

OPINION BY RICE, P. J., October 17, 1904:

The plaintiff on his return from a creamery was crossing a bridge which forms part of a highway in the defendant township. His horse stepped though a hole in the bridge about five inches wide and between fifteen and twenty inches long, and he was thrown from his wagon and injured. The hole had been in the bridge for about three weeks before the accident, and the plaintiff had observed it as he went to and fro daily, but on the day preceding one Wheeler, without the direction or knowledge of the supervisors, had nailed a board over the hole, a repair the plaintiff had notice when first crossing the bridge on the morning of the accident. It is alleged that the board was removed—whether intentionally or otherwise does not clearly appear—and the hole uncovered before his return, which was an hour or two later. The number of milk cans in his wagon prevented the use of a seat and he was riding on one of the cans.

It is urged very strenuously and with much ability that the plaintiff was guilty of contributory negligence, and that binding instructions for the defendant should have been given for that reason. This we regard as the most serious question in the case and one not free from difficulty. The plaintiff testified that he was looking at his "horse and the road and straight ahead," but did not notice the hole; and in explanation of his failure to do so he said: "All I want to say is that the horse might have been in my way to have hid my view from the hole. I do not say that she was, but she might have been." But it is argued that as he had previously testified, when under a severe and protracted cross-examination, that he did not think there was anything to prevent his seeing the hole if he had been looking, the court ought to have charged that according to his own admission he was negligent and could not recover. But it is not clear that by this latter admission he meant more than that he could have seen the hole if he had looked for it,

and other portions of his testimony tend to show that this was
what he meant.  Under this interpretation there was no irrec-
oncilable conflict in his testimony; at least there was no such
conflict as would have justified the court in charging the jury
that the portion of it first above referred to was unworthy of
credence.  It is for the jury to determine " what a witness
means when he uses language warranting distinct and opposite
inferences.  They must determine his meaning, not only from
his words but from his manner and all the surrounding circum-
stances, and find whether he was careful or careless: " Bruch
v. Philadelphia, 181 Pa. 588.  Seeming inconsistencies in a
party's testimony do not necessarily lead to the conclusion that
he is untruthful; nor, where his testimony relates to a subject
as to which the burden of proof is on the opposite party, will
they, ordinarily, warrant the court in instructing the jury to
reject those parts of it which make in his favor, and to base
their verdict on those parts of it which seem to make against
him.  " Under these circumstances the case must go to the
jury, whose province it is to reconcile conflicting statements,
whether of the same or different witnesses, or to draw the line
between them and say which shall prevail: " Ely v. Pittsburg,
Cincinnati, etc., Ry. Co., 158 Pa. 233.  This was said in a
case where on part of the plaintiff's testimony he was entitled
to go to the jury, and on another part of it he was not.  The
same principle was applied in Strader v. Monroe County,
202 Pa. 626, where, speaking of the plaintiff's testimony,
the court said: " There are, perhaps, inconsistencies in her
testimony, but they certainly are not so glaring as to stamp
it with untruthfulness; some of her answers to adroit and
persistent cross-examination indicate that she might have
seen the obstruction and have avoided it; others, that she
exercised all the care demanded by prudence under the cir-
cumstances."  It was accordingly held that her testimony,
notwithstanding its apparent inconsistencies, was for the jury.
" The court was bound to submit it to them.  In trials of
fact, if it were required that all the testimony should be
consistent with itself or that of other witnesses, but few cases
would reach a jury."  It is unnecessary to cite other cases.
We think it clear that the court would not have been war-
ranted in charging the jury that the plaintiff was convicted

by his own admissions of neglect to look where he was driving.

But it is argued that irrespective of any admission of the plaintiff the principle is applicable that it is vain for one to say that he looked and did not see when if he had looked he must have seen, and that in such a case it is not the duty of the court to submit to the jury the question whether he looked and failed to see the danger. This, however, is a rule which in its nature is applicable only to clear cases, to those which practically only admit of one view, and we are not prepared to say that it was applicable here. True, the plaintiff knew that there had been a hole in the bridge but he also knew that it had been covered, and had no reason to expect that the board which had been nailed over it would be removed before his return from the creamery. This, we held when the case was here before, 20 Pa. Superior Ct. 337, did not relieve him from the duty to look where he was driving, but we thought then, and still think, that whether in view of the size and location of the hole, his position on the wagon and all the circumstances he must have seen the hole if he had observed this plain duty was a question for the jury. In a somewhat similar case we said : " That a pedestrian might, and perhaps ought to have seen it before stepping into it is not the conclusive test in this case. Nor is the fact that one knowing of the existence of the hole could see it from the opposite side of the street decisive of the question of the driver's negligence. That a driver of ordinary prudence, using due care, necessarily would have seen that there was a dangerous hole at that point is not the necessary and unavoidable inference to be drawn from the facts, in the face of his positive testimony that he did not see it, and of his explanation. He did not testify to an impossibility. A jury might have been convinced by his manner upon the witness stand that he told the truth :" Graham v. Philadelphia, 19 Pa. Superior Ct. 292. We also said in the same case that while it is the duty of a driver, as it is of a pedestrian, to look where he is going, yet it cannot be laid down as an inflexible and unvarying rule of law that he must keep his eyes constantly fixed on the roadbed and is affected with notice of every defect therein, great or small, which can be detected by doing so. As was said in Iseminger v. York Haven Water & Power Co., 206 Pa. 591, so it may be said

here : " The exceptional facts make the case a close one, and place it near the border line, but as there was at least a doubt whether the plaintiff exercised ordinary care under the circumstances, the question was for the jury. It is only in clear cases where the facts and inferences to be drawn from them are free from doubt that the court is warranted in saying that there was contributory negligence." See also Strader v. Monroe County, supra ; Butcher v. Philadelphia, 202 Pa. 1 ; Wall v. Pittsburg, 205 Pa. 48; McHugh v. Kerr, 208 Pa. 225.

The instructions of the learned judge as to the law bearing upon the question of the defendant's negligence were full, accurate and impartial. He said nothing to bind the jury or to prelude them from deciding the question for themselves on the evidence. In view of the abundant and uncontradicted evidence that the hole had been in the bridge for two or three weeks, and that the supervisor who had special charge of the bridge was expressly notified of its existence, he did not exceed the latitude allowed a trial judge in expressing an opinion upon the evidence, when, in concluding his charge he made remarks quoted in the fifth assignment of error.

The duty of the plaintiff was to exercise care according to the circumstances. While, as we said when the case was here before, the fact that he had noticed when crossing the bridge in the morning that a board had been nailed over the hole did not relieve him from the duty to look where he was driving, yet we think it clear that it was not an irrelevant circumstance. But for that fact it would have been his imperative duty to avoid the hole as he had done on previous occasions. Whether, in view of his knowledge both of the previous existence of the hole, and of the fact that when he crossed the bridge in the morning it was covered, he exercised the care of an ordinarily prudent man by looking " at his horse and the road and straight ahead " was a question for the jury. See Kingston v. Gibbons, 5 Cent. Repr. 222 ; Chilton v. Carbondale, 160 Pa. 463. In submitting that question to them the court would not have been justified in excluding either of these facts from their consideration. And if it was proper for him to testify to the latter fact, it was proper to corroborate him by the testimony of other witnesses. Therefore, the third and fourth assignments are not sustained.

In Brown v. White, 202 Pa. 297, the trial judge charged that in estimating the damages the jury should allow for the direct expenses incurred by the plaintiff by reason of the injury, and further, that "the mere fact that it does not appear from the evidence that she has not paid her medical aid will not prevent her from recovering in this case what would reasonably compensate her physician. She should be entitled to recover that." This was held to be error, because there was no evidence whatever as to what the physician's services were reasonably worth and no presumption that the jury knew the value of such services. "It was incumbent on the plaintiff before she could recover from the defendant compensation for medical aid to furnish the jury evidence from which they could determine what had been paid for such services or such amounts as the services were reasonably worth. Failing in this, there was no basis on which the jury could estimate or intelligently determine this element of the plaintiff's damages." In the present case the learned judge stated correctly the general rule as to the measure of damages in such cases in that portion of his charge which is quoted in the second assignment, but when he came to instruct the jury specifically, in the language of the plaintiff's point, as to what they should take into consideration in determining the damages under the evidence in this case he said nothing as to recovery for medical services, and confined them to the "direct expenses incurred" and other elements of damage, the instructions as to which are not complained of. The appellant's counsel interpret the instructions as permitting the jury to award to the plaintiff what the services of his physician were reasonably worth, without any evidence to guide them, and therefore in violation of the rule laid down in Brown v. White. We do not think this is the necessary or more natural and reasonable construction of the judge's charge and answer to the point when read together, as they ought to be. The amount of the verdict, when considered in the light of the evidence as to the plaintiff's injuries, and of the verdict given by the first jury, does not indicate that they went astray in this particular. But entirely apart from this, the presumption is that the jury were guided by the evidence in allowing for "direct expenses incurred," and in making up their verdict allowed only for such as had

been duly proved. Doubtless more specific instructions would have been given if the defendant had asked them, but we are not convinced that those given were inconsistent with the just and reasonable rule laid down in Brown v. White.

All the assignments of error are overruled and the judgment is affirmed.

MORRISON, J., dissents.