Bradford *v.* West Penn Railways Company, Appellant.

Argued April 24, 1930. Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Robert W. Smith* of *Smith, Best and Horn,* for appellant.—A presumption of contributory negligence arises against a person who is injured in broad day-light by a defect in a highway which is easily observable: Bean v. Philadelphia, 260 Pa. 278; Lerner v. Philadelphia, 221 Pa. 294.

*Charles D. Copeland, Jr.,* for appellees.—Merely because one witness claims to have made more accurate measurements than another, is not sufficient ground for disregarding the estimates of the other: Corbin v. Haws Refractories Company, 277 Pa. 126; Fuher v. Westmoreland Coal Company, 272 Pa. 14.

OPINION BY BALDRIGE, J., July 10, 1930:

About 12:30 P. M., on December 8, 1927, Meredith Bradford, aged 19, driving a motorcycle on First Street, in the Borough of Jeannette, Westmoreland County, collided with a pile of brick, 18 inches high, 2 feet wide, and 5 feet long, located about 18 inches from the trolley rail, which the plaintiffs aver was negligently placed there by the defendant. An action in trespass was brought and a verdict resulted in favor of the plaintiffs. The court refused a motion for judgment n. o. v., which has been assigned for error.

Meredith Bradford claimed at the trial that on account of his injuries he had no recollection of the occurrences at the time of the accident. George Eglhant, who was riding with him in a side car attached to the motorcycle, and the only eye witness to the accident, said that their car was proceeding northward on the east side of First Street toward the Harrison City Road at about fifteen miles an hour. Just before reaching the old borough line, where the paving ends on the right side of the trolley tracks, they angled to the left, reduced their speed, crossed the tracks to the west side of the street, and proceeded northward. Shortly thereafter, the collision occurred, which caused the driver to lose control of the motorcycle, and as a result it ran off the road and collided with a pole.

The plaintiffs maintain that the bricks were a short distance over a "knuckle" in the road, which prevented the driver from seeing the obstruction until it was too late to avoid it, although Clair, a witness for the plaintiffs, testified that he went over the "knuckle" just before the accident and that he was able to see the pile of bricks. It was essential to a recovery not only to show the presence of a "knuckle" but to give some description of its size and general character, so that the jury could have determined if it, in fact, interfered with the driver's vision. The word itself, as used, does not carry any implication that its dimensions were so great as to have that effect. The only attempt to throw any light on this question was by Clair who said, "I call it a grade."

Oscar Clair and Leo Spore gave an estimate of 20 feet between the "knuckle" and the pile of bricks. Mrs. Scanlon and her daughter, Dorothy, testified that they were on the road farther down the hill and looked back and after the motorcycle had crossed the track and was coming over the "knuckle," that "a good little while" after, as they walked slowly from the road to the sidewalk, they heard the crash. This testimony in-

dicates that the accident did not occur immediately after the car went over the "knuckle." As the motorcycle was over the brow of the hill when it started its diagonal course to the left and as the driver was five feet above the level of the road, there was no plausible explanation given for his failure to see the bricks, if he had been observing. There was no evidence of any traffic which would have obscured his vision or prevented him from diverting his car to the left where there was ample room to pass the obstruction.

The experienced engineer called by the defendant showed by a map made by him that the pile of bricks, as located by the witness for the plaintiffs, which was approximately opposite to where the pavement ended between the trolley rails, was about 150 feet from the brow of the hill over which the motorcycle had travelled and 50 feet from the old borough line; that the first 50 feet of the road, from the brow of the hill, proceeding northward, is a 1.6 per cent descending grade, and the next 100 feet is between a 4 and 5 per cent grade. He testified that from the crown of the hill, at the elevation of a motorcycle, one can see all the intervening pavement to the point of the accident, and that there was no "knuckle" in the road. His map showed that the descent is a little greater at about the place where the motorcycle crossed, but from the contours shown, there was no condition of the highway that would have interfered with the vision of the driver of a motorcycle.

In Bean v. Philadelphia, 260 Pa. 278, the Chief Justice, delivering the opinion of the court, said, "When a person is injured in broad daylight by a defect in the highway which is easily observable, a presumption of contributory negligence arises and the burden is upon the plaintiff to show conditions outside himself that prevented him from seeing the defect, or which would excuse his failure to observe it (Lerner v. Philadelphia, 221 Pa. 294, and opinion by RICE, P. J. in

Graham v. Philadelphia, 19 Pa. Superior Ct. 292, 295)."

The lower court in overruling the motion for judgment n. o. v., fell into error as to the testimony, as he took the position that the jury might have concluded that the driver's vision was obstructed by men who were working around a truck or car that was standing near the place of the accident. The only testimony as to the location of these men prior to the accident, respecting this pile of brick, was that of Eglhant and he said that he saw them behind a car or a big truck farther down the hill when they "shot right over the knob." It is true that there was testimony that after the accident the men were around the brick pile, but their position at that time is not of importance in this case.

It is contended upon the part of the appellees that in view of the oral testimony as to the location of the bricks but a short distance beyond the brow of the hill, and Eglhant's statement that he was unable to see the bricks, that the contradiction in the testimony was for the jury's consideration. But the indisputable physical facts cannot be disregarded, as they clearly demonstrate the error of the statement that the bricks were not within the vision of the driver. "We are not required to believe what physical facts demonstrate to be untrue, and when an infallible mathematical test is applied to the testimony of a witness and he is found to be mistaken in a material matter, it would be a travesty on justice to allow the jury to believe such testimony and permit them to render a verdict based thereon:" Radziemenski v. B. & O. R. R., 283 Pa. 182 (184).

In Cubitt v. N. Y. C. R. R., 278 Pa. 366 (371), the court said, "It is urged, however, that in all such cases the jury must pass on the question, and, when the credibility of witnesses is alone involved, this statement of the legal rule is correct: Holzheimer v. Lit Bros., 262 Pa. 150; Shaughnessy v. Director General, 274 Pa. 413.

But where the indisputable physical testimony, as indicated by actual measurements, maps or photographs, negatives the existence of the fact ordinarily presumed, this is not true.''

As it is apparent that the verdict was found on the theory of the impossibility of the driver, by the exercise of care, to see the bricks, which is not true, it is our clear duty to correct the error: Horen v. Davis, 274 Pa. 244.

We are all of the opinion that the testimony offered and the physical facts convict the driver of contributory negligence.

Judgments of the lower court are reversed and judgment is hereby entered for the defendant.