**BROWN v COLUMBUS (city)**

Ohio Appeals, 2nd Dist, Franklin Co

No 2831. Decided April 21, 1938

Joseph McGhee, Columbus, and Alfred M. Davis, Columbus, for plaintiff-appellee.

J. L. Davies, City Attorney, Columbus, and Baxter Evans, Asst. City Atty., for defendant-appellant.

## OPINION

By BARNES, PJ.

The above entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

The action is for wrongful death as authorized under the provisions of §§10509-166 and 167, GC. The administrator brings the action for his benefit as surviving spouse and Katherine Browning, mother, and claimed to be next of kin.

The decedent left no children or their descendants surviving.

The cause has been tried twice in the Common Pleas Court. In the first trial the jury returned a verdict for plaintiff in the sum of $4,000.00 and through special interrogatories divided the amount, $1,000.00 to the surviving spouse and $3,000.00 to the mother, Katherine Browning.

On motion for new trial, the trial court sustained motion on the ground that the amount awarded the mother was excessive. The trial court suggested a remittitur of $2,000.00 of the award to the mother, but plaintiff declined to accept. Motion for new trial was sustained.

In the second trial, which is the predicate for this proceeding, the jury returned a verdict of $6500.00. In answer to special

interrogatory, the amount was divided $5,-000 to James E. Brown, the surviving spouse and $1500.00 to the mother of decedent. Following the return of the verdict, motion for new trial was interposed, overruled and judgment entered upon the verdict.

This is the final entry from which error is prosecuted to this court.

The following brief summary of facts will render understandable the nature of the controversy and the manner in which the claimed errors arise.

On Saturday night, October 12, 1935, James E. Brown and his wife, Madeline M. Brown, early in the evening drove in their automobile to the home of a friend for a social visit. These people had been friends for several years and at intervals would exchange social visits. Another couple was also invited to this home on the night in question. Dinner was served after midnight. Near 2:00 o'clock, Mr. and Mrs. Brown started for home. Their car was parked in front of the friend's home. Mr. Brown drove into the driveway and backed the car around so as to head east. At this hour of the morning, according to the evidence, it was very foggy and as the Browns were proceeding on their way, they found it difficult to follow the road by reason of the density of the fog. It was found that they could follow the curb since it was lighter in color. Mrs. Brown had the window down and thereby had a better view of the curb than did Mr. Brown, looking through the windshield and ahead. From time to time she would advise him as to his getting away from the curb or being too close to the curb. The speed at which they were driving was 13 to 15 miles per hour. It was Mr. Brown's intention to make the turn on Richmond Street, but by mistake made his turn on Acton Street, parallel to Richmnod. Mr. Brown was familiar with Richmond Street, but had never been on Acton Street before and did not know that he was on Acton until after the accident. As the Browns proceeded on Acton Street they came to an intersecting street. By reason of the density of the fog, Mr. Brown stopped his car and listened for traffic which might be moving on the intersecting street. Hearing nothing he shifted into second, crossed the intersecting street and within about 50 to 75 feet from the intersection crashed into a large elm tree located in the street on his right hand side and about 6 or 7 feet from the right curb. Both Mr. Brown and his wife were rendered unconscious. People living in the neighborhood heard the crash and call-

ed the police. The Browns were taken to the hospital. Mrs. Brown died the next day.

Mr. Brown's testimony as to the conditions, locations and distances at the scene of the accident was obtained through a visit made to the scene after he was discharged from the hospital. Mr. Brown testifies that he never saw the tree. The claimed excuse for not seeing the tree was the density of the fog. According to the testimony of Mr. Brown and other witnesses the fog on the night in question was very dense and was described as being in spots. One of the police officers who was at the scene shortly after the accident testified that the fog was worse around the tree. The body of the tree was dark in color and it is claimed that this fact would make it hard to see through fog. The scene of the accident was in an outlying district. When Acton Street was opened up, the elm tree, for some unknown reason, was left standing. Some four or five years previous, another accident occurred by driving into this same tree, and the same was followed by an action which the city defended. This together with other evidence presents ample evidence that the city authorities had knowledge of the location of the tree in the street. The claimed liability against the city was its failure to keep the street open, in repair and free from nuisance, as required under §3714, GC.

The testimony and photographs attached as exhibits indicate that Acton Street, at and near the elm tree in question had grass growing between the curb and the tree and extending up to the intersecting street that the Browns crossed. At this point, the curb was partially covered with grass and leaves and was not as discernible as other places. The curb did, however, present an elevated outline. The photographs bear evidence that the traveling public did go around the tree on the left hand side, so designated from the direction in which the Browns were traveling.

The answer of the city denies all allegations of negligence and further answering avers that the fatal accident was due solely to the negligence of the husband of the injured party.

Appellant presents the following assignments of error:

1. The court erred in the exclusion of evidence over the exception of the appellant.

2. The court erred in overruling the appellant's motion to withdraw from the consideration of the jury the question of the

payment of any damages to James E. Brown as next of kin, at the close of the appellee's case.

3. The court erred in overruling the appellant's motion to withdraw from the consideration of the jury the question of the payment of any damages to James E. Brown as next of kin, at the close of all the evidence.

4. The court erred in overruling the appellant's motion for a directed verdict in its favor at the close of the appellee's case.

5. The court erred in overruling the appellant's motion for a directed verdict in its favor at the close of all the evidence.

6. The court erred in its charge to the jury.

7. The court erred in overruling the appellant's motion for a new trial.

8. The verdict of the jury is contrary to the charge of the court.

9. The verdict of the jury is not sustained by sufficient evidence.

10. The amount of recovery is excessive and appears to have been given under influence of passion and prejudice.

11. The court erred in not rendering judgment in favor of the appellant pursuant to §11601 GC, although said appellant was entitled by law thereto.

We shall take up the claimed errors in the same order as set out in the assignment.

**1. THE COURT ERRED IN THE EXCLUSION OF EVIDENCE OVER THE EXCEPTION OF THE APPELLANT.**

Under this specification of error, attention is called to two instances where the trial court excluded evidence offered by counsel for the city. The first was during the cross-examination of the plaintiff, Mr. James E. Brown. Inquiry was made of Mr. Brown as to whether or not he had had other accidents. Objection was interposed and sustained. This subject was entirely collateral and in no way connected with plaintiff's testimony in chief.

Trial courts in their discretion may or may not permit cross-examination on matters not brought out in chief. The trial court did not commit prejudicial error in sustaining the objection to the inquiry.

The second instance occurred during the examination of Police Officer, Tharp. This witness narrated his trip to the hospital following the accident and his talk with Mr. Brown. He had given testimony that he smelled whiskey on the breath of Mr. Brown. During the course of the inquiry the following question was propounded:

"Q. How did Mr. Brown talk, what was his manner at that time?"

To this question counsel for plaintiff interposed objection, which the court sustained, with the comment: "He can state what he said." Very clearly the question asked for a conclusion and the court's sustaining the objection very properly went to the form of the question. In any event, no prejudicial error can be presented for the reason that counsel for the city failed to dictate into the record their offer to prove.

Assignments of error, 2 and 3, will be considered together.

**2. THE COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO WITHDRAW FROM THE CONSIDERATION OF THE JURY THE QUESTION OF THE PAYMENT OF ANY DAMAGES TO JAMES E. BROWN AS NEXT OF KIN, AT THE CLOSE OF THE APPELLEE'S CASE.**

**3. THE COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO WITHDRAW FROM THE CONSIDERATION OF THE JURY THE QUESTION OF THE PAYMENT OF ANY DAMAGES TO JAMES E. BROWN AS NEXT OF KIN, AT THE CLOSE OF ALL THE EVIDENCE.**

Specifications of error 2 and 3 are based on the claim that James E. Brown, husband, for whose benefit the action is brought, was guilty of contributory negligence in that he operated the automobile at and immediately before the collision with the tree, at a speed greater than was reasonable and proper, and so as not to be able to bring it to a stop within the assured clear distance ahead, and all in violation of §12603, GC. The only direct evidence presented on the question of speed was that of the plaintiff James E. Brown. He testifies that immediately before the accident he was operating the car in second gear and at a speed of from 13 to 15 miles per hour. It is urged that the severity of the accident, both to the car and the occupants, presents a strong inference that the speed was much greater. We think this is entirely a jury question and it was properly presented to them with full instructions.

The question arising under the assured clear distance ahead provision of the Code

presents a very difficult problem. This provision of the statutory law is of comparatively recent enactment. Its proper interpretation has been a matter of much concern to both Bench and Bar.

The first case reaching the Supreme Court involving the assured clear distance ahead was the case of **Skinner v Penn. R. R. Co., 127 Oh St 69**. In that case the driver of an automobile crashed head on into a railroad car, the same being a part of a train temporarily stopped across the highway. This case was decided in June, 1933, and therein it was held that the assured clear distance ahead provision of §12603, GC, constituted a specific requirement of law, the violation of which constituted negligence per se.

Under the facts in the Skinner case, the severity of the rule is not so apparent, but the opinion provoked much discussion among lawyers, and it was very generally the expressed viewpoint that in effect, liability for head-on collisions was eliminated.

The case of **Gumley, Admr. v Cowman**, was decided the year following. See **129 Oh St 36**. This case involved an accident wherein plaintiff's decedent crashed into an unlighted truck temporarily stopped along the highway. The opinion in this case as well as in the Skinner case was by Chief Justice Weygandt. On page 38 of the opinion he calls attention to the similarity of the two cases as follows:

"Each collision occurred at night. Each was upon a straight, unlighted highway in open country. Each involved 'rainy, misty, foggy' weather. The rates of speed did not vary greatly; the Skinner car was traveling approximately forty miles per hour, while in the instant case the speed was thirty or thirty-five miles per hour. The distances at which the objects were suddenly discovered were almost the same; in the Skinner case the freight train was not seen until the automobile was within four or five feet of it, while in this case the truck was but five or ten feet ahead. In the Skinner case the freight train was standing, while in the instant case there is the difference that the truck was moving very slowly. In the Skinner case the train was across the entire highway, but this case differs in that the truck occupied only a part of the right side of the highway, and the left side was open, thus affording the decedent an opportunity to pass. In the Skinner case there was no traffic moving in the opposite direction while in the instant case the decedent's automobile passed another just before the collision. However, in this case Dehan testified that he could at all times see at least two hundred feet ahead even when their lights had been dimmed. Then, too, the second amended petition does not allege that the lights of the passing automobile interfered with the decedent's view of the highway; nor is there testimony to this effect."

The right of recovery was denied on the authority of Skinner v Penn. R. R. Co., supra.

In the last case, the second syllabus, the Supreme Court, gives construction to the Code section that the assured clear distance ahead provision is the distance within which the driver may bring his automobile to a stop within the distance at which he can see a **discernible** object obstructing his path. (Emphasis ours).

In the case of **Kormos v Cleveland Retail Credit Men's Company, 131 Oh St 471**, the Supreme Court again had under consideration this same provision of §12603, GC. The opinion was by Justice Jones and was released July 15, 1936. Liability was denied. However, syllabus 3 further construes the provisions of the section as follows:

"3. An operator who has failed to comply with the 'assured clear distance' statute may excuse such failure and avoid the legal imputation of negligence per se by establishing that without his fault and because of circumstances over which he had no control, compliance with the law was rendered impossible."

The Courts of Appeals of Wayne County in the case of **Sidle v Baker, 52 Oh Ap 89, (21 Abs 513)** decided February 13, 1936, in a very able opinion reversed the trial court's judgment of no liability. While the case of **Kormos v Credit Men's Company, 131 Oh St** supra, has not yet been decided, the reasoning of the Court of Appeals was along the same line, although expressed in somewhat different language. In this case of Sidle v Baker, supra, syllabus 4 very succinctly presents the factual questions and the principle announced.

Syllabus 4 is as follows:

"4. Where a defendant parked his automobile on a highway in violation of law, said parking occurring about 75 feet from the brow of a hill, and where plaintiff, approaching in his automobile from the

rear of defendant's automobile, at a speed not necessarily unreasonable under the circumstances, did not and could not see defendant's automobile until reaching the top of said hill, and then, in endeavoring to stop, was precipitated into a ditch at the side of the road and injured, a question of fact for submission to the jury was presented, regardless of whether or not the provisions of §12603, GC, relating to the driver of an automobile being able to stop 'within the assured clear distance ahead', were applicable."

This syllabus could very appropriately be re-written to conform to the language of the Supreme Court in 131 Oh St surpa, without changing its import or meaning. In other words, Sidle v Baker presented the question as to whether or not the plaintiff, through the record, excused his failure to stop and avoid the legal imputation of negligence per se by establishing that without his fault and because of circumstances over which he had no control compliance with the law was rendered impossible.

Our court in the unreported case of Hangen, a minor, v Hadfield, No. 526, Darke County Court of Appeals, decided March 12, 1938, considered and determined the case very similar in its facts to Sidle v Baker, supra, and arrive at the same conclusion.

The amendment to §12603, GC, incorporating therein the assured clear distance provision was enacted in 1929. In the case of Skinner v Penn. R.R. Company, Chief Justice Weygandt makes the observation that this amendment was modeled from a like statute of the state of Michigan enacted in 1927. Any decisions by the Supreme Court of Michigan involving the assured clear distance provisions of its statute will be interesting.

We are referred to the case of Garrison v City of Detroit, 270 Michigan, 237 (258 NW 259) decided January 7, 1935.

Syllabus 1 and 2 reads as follows:
"1. Safety rule that motorist must drive at such speed as to be able to stop within the assured clear distance ahead does not apply where city leaves an unlighted abandoned signal device in center of intersecting streets and motorist collides with it on a rainy night, but motorist's negligence is a question of fact.
"2. Whether motorist was contributorily negligent in colliding with unlighted abandoned signal device in center of intersecting city streets on rainy night while driving

at about 20 miles per hour held for trial judge."

The facts presented in the case are amplified through the following statement in the opinion:

"January 14, 1932, about 11 P. M., while driving north on First Street in the City of Detroit, at a speed of 20 miles per hour or less, plaintiff struck an unlighted traffic signal post in the center of the intersection of Jones Street, and was injured. The signal device consisted of a cement base, 3 feet in diameter and 3 feet high, supporting a 6 inch steel post bearing guard lights 5 feet above the pavement and traffic lights 9 feet high. The post was painted black and yellow camouflaged and was muddy and dirty.
"The post had been discontinued for signal purposes November 24, 1931, and at the time of plaintiff's accident neither warning nor traffic lights were burning. During the same week there had been two other collisions with the post and in about a month seven accidents, four cases of which required wrecker service."

This Michigan case is so comparable in its facts to the instant case as to require a very thorough consideration as to whether or not the Ohio courts will follow the Michigan rule.

In the instant case there is evidence substantiating the fact that Mr. Brown, the driver of the automobile, immediately preceding the accident was operating the car at a speed of from 13 to 15 miles per hour and in second gear. By reason of the foggy condition, great care was required in order to keep within the bounds of the traveled road. Both Mr. Brown and his wife were using the curb to their right as a guide to keep them in the road. Mr. Brown in looking through his windshield and ahead was concentrating on his effort to see the curb. That neither saw the tree with which the automobile collided is apparent. There is evidence that the fog was in spots and that it was heavier around the tree.

The question now arises as to whether or not this situation presents evidence of legal excuse so as to void the legal imputation of negligence per se.

Is it proper to say that under the facts of this case Mr. Brown was guilty of negligence as a matter of law? To so hold would be establishing a fixed rule that motorists must not drive in fog at all where

it interferes with their being able to stop within the assured clear distance ahead. That neither the care with which they drive nor the nature or character of the discernible object with which they collide will in any instance relieve them of contributory negligence. This is entirely too harsh a rule to be adopted. We hold to the view that under the circumstances such as disclosed in the instant case it is a jury question to be determined under proper instructions from the court.

We do not mean to say that under all circumstances where a motorist is driving in a fog the question of the assured clear distance provision of the Code being applicable must be left to the jury, but on the contrary we hold that each case must stand on its own facts and under the facts in the instant case a rule of reason demands a holding that it is a jury question.

Specifications 4 and 5 will be grouped for consideration.

4. THE COURT ERRED IN OVERRULING THE APPELLANT'S MOTION FOR A DIRECTED VERDICT IN ITS FAVOR AT THE CLOSE OF THE APPELLEE'S CASE.

5. THE COURT ERRED IN OVERRULING THE APPELLANT'S MOTION FOR A DIRECTED VERDICT IN ITS FAVOR AT THE CLOSE OF ALL THE EVIDENCE.

Specifications 4 and 5 are to be distinguished from 2 and 3 in that 2 and 3 merely affect the right of the spouse, James E. Brown, to recover, while 4 and 5 raise the question of the contributory negligence of the decedent. Under the provisions of §10509-166, GC, an action for wrongful death may not be maintained unless the decedent, if death had not ensued, would have been entitled to bring an action for personal injuries.

Counsel for appellant seek to impute the husband's claimed negligence to the wife on the claim of joint enterprise.

We are not able to follow counsel's contention that the evidence tends to present this issue of joinder.

The wife was doing nothing more than was her bounden duty under an unusual situation.

Any guest in a conveyance is obligated, when approaching impending dangers to use ordinary care in ascertaining their presence and if discovered, to advise the driver of the vehicle of such fact. This is noth-

ing more than the law of self-preservation. In the instant case the wife was not driving the car nor was she in any sense controlling its operation. She was doing nothing more than availing herself of a better opportunity to see the curb on the right hand side and then advise her husband of his proximity to it. This activity on the part of the decedent would not bring into the case an issue of joint enterprise.

SPECIFICATION NO. 6.
THE COURT ERRED IN ITS CHARGE TO THE JURY.

Under this claimed error, our attention is called to three specific instances. First, it is claimed that the court erred in his charge in regard to the city's duty under §3714, GC, pertaining to the care of streets.

Before argument, counsel for defendant presented to the trial court the following written request asking that the same be given to the jury before argument:

"The court instructs you that a municipality is not required to improve or make passable the whole width of the street, that it is only required to improve and make passable such portion of its streets as is required to make them reasonably safe for the needs of the public; that it is the duty of the city to exercise ordinary care to keep in a reasonably safe condition for passage and travel such parts of the streets only as have been improved and opened for travel, if such portion was reasonably sufficient for the needs of the public using these streets."

The court refused to give the above special request. The court in his general charge instructed the jury on the above subject as follows:

"I instruct you that if you find by preponderance of the evidence that the tree was located within the limits of the street designated for public travel and dedicated to the use and purpose of the public, then in that event it would constitute negligence on the part of the city. * * * It is the duty of the city to keep its streets free from obstructions, and if the city fails to keep its streets free from obstruction and the obstruction causes injury or hurt to another wrongfully, then in that event the city would be said to be negligent. You will inquire, therefore, from the facts and circumstances in evidence was there a tree here and where was it located, was it with-

in the curb line, was it within the street as alleged and claimed by the plaintiff?"

The trial court committed no error in refusing to give to the jury, before argument, the special request. This is true for two reasons, first, it is abstract in its nature and the court in its discretion is not required to give mere abstract principles of law, second, under the situation as developed under the evidence, it did not adequately instruct the jury as to what was meant by the expression "parts of the streets only as have been improved and open for traffic." Throughout the trial it was apparent that counsel for the city was insisting that there was a well defined used portion of this street going around the tree and the special instruction is intended to convey the idea that this portion of the street where the publc generally traveled was the only part that the city was required to keep open, in repair and free from nuisance. The evidence presented by plaintiff disclosed that the street was graveled and hard surfaced from curb to curb and that the tree was in the street and between the curbs.

It is quite true that the authorities in their discretion may determine what portion of a street will be devoted to public travel and what portion devoted to other uses, such as, tree lawn, utility poles, sidewalks, etc. Where curbs are located on either side of a street and the roadway graded, graveled, or hard surfaced from curb to curb, all parts of the street between the curbs are thereby designated for public use by travel.

We find no error in the court's charge to the jury in the above.

Special request No. 2 complains that the court erred in refusing to charge the jury as to joint enterprise.

We have already discussed the question of joint enterprise and it is our determination that it was not an issue in the case.

The third objection to the charge concerns the court's instructions as to the evidence on intoxicating liquor. The following in substance, was all the evidence on the question of intoxicating liquor. Plaintiff testified that during the visit at the friend's home, on the night in question, liquor was served. During the entire evening he had two bottles of beer and a high ball. About 9:00 or 9:30 he had one bottle of beer and about an hour later a second, and near midnight or shortly thereafter, the third drink. Following this they had a heavy dinner and then remained at the home until 2:00 o'clock. Plaintiff testified that he was not intoxicated and the friend at whose home they were visiting testified that he was not intoxicated at the time he left their residence. A police officer in answer to the question said that he saw the plaintiff, James E. Brown, at the hospital shortly after the accident and when he talked to him he had the odor of whiskey on his breath.

There was also testimony that on the ground close to the car at the scene of the accident there was found an empty whiskey bottle. No evidence connected this bottle with the Browns or their car, other than its close proximity. One police officer said it was not unusual to find whiskey bottles in this location as it was a favorite spot for petting parties.

At the close of the court's charge, the usual inquiry was made of counsel as to whether or not counsel requested anything further. The stenographer's notes indicate that counsel approached the Bench, after which the trial court gave to the jury the following:

"Members of the jury, some evidence has been adduced here touching the question of drinking. Plaintiff testified that he had some drinks at his friend's home and a bottle was found. Now, the statutes ot Ohio make it unlawful for any person tc operate a motor vehicle while under the influence of alcoholic beverages, but I instruct you that there is no evidence here that the plaintiff at the time he was operating the motor vehicle was under the influence of intoxicating liquor and you will disregard that."

This instruction was evidently given at the request of counsel for plaintiff. The court could very well have omitted it, but after a careful consideration of all the evidence presented on this subject, we are unable to conclude that the court's action was erroneous.

Specifications of error 7 and 8 may be grouped.

7 THE COURT ERRED IN OVERRULING THE APPELLANT'S MOTION FOR A NEW TRIAL.

8 THE VERDICT OF THE JURY IS CONTRARY TO THE CHARGE OF THE COURT.

Specification No. 7 is grounded upon the several assignments of error heretofore and hereafter to be discussed. Nothing further need be said. The same observation may be made relative to specification No. 8.

Specifications 9 and 10 will be grouped.

9. THE VERDICT OF THE JURY IS NOT SUSTAINED BY SUFFICIENT EVIDENCE.

10. THE AMOUNT OF RECOVERY IS EXCESSIVE AND APPEARS TO HAVE BEEN GIVEN UNDER INFLUENCE OF PASSION AND PREJUDICE.

So far as the right of recovery is concerned we think the jury were warranted in their return of the verdict in favor of plaintiff. We have no difficulty in sustaining the amount of recovery so far as it refers to the surviving spouse, James E. Brown.

The amount allowed under the special interrogatory to Katherine Browning mother of the decedent, gives us much concern, not only under the claim that the amount was excessive but more seriously on the question as to whether or not, under the language of the Code the mother, Mrs. Browning, is permitted to recover at all.

Sec 10509-166, GC, provides for liability and actions for wrongful death.

Sec 10509-167, GC provides that the action must be brought by the personal representative of the decedent and then states,

"but shall be for the exclusive benefit of the surviving spouse, the children and other next of kin of the decedent."

The right of recovery of Mrs. Browning must be maintained, if at all, on the ground that she comes within the classification "and other next of kin of the decedent."

Counsel for plaintiff informs us that they are relying on the case of City of Cincinnati v Bachmann, 51 Oh Ap 108, as supporting the law sustaining the special interrogatory allowing $1500.00 for Mrs. Browning. We have carefully examined this case and are unable to conclude that it so determines. The pertinent question determined in the reported case was that §10509-167, GC, as effective January 1, 1932, was not determinative of the persons for whose benefit the action was brought, but that the earlier section §10772 GC was the controlling section. This section §10772 GC provided as follows:

"Such actions shall be for the exclusive benefit of the wife, or husband, and children, or if there be neither of them, then of the parents and next of kin of the person whose death was so caused."

There are some statements in the opinion purely dicta, which may bear the construction placed thereon by counsel for plaintiff although not necessarily so. We find that the words "next of kin" have a well defined meaning and therefore must be so construed, unless the context thoroughly shows a contrary meaning.

The case of Steele v Kurtz, 28 Oh St 191, is in point on principle. On page 196 of the opinion a quotation is given from Bouvier defining the term "next of kin".

"This term is used to signify the relations of a party who has died intestate. In general no one comes within this term who is not included in the provisions of the statutes of distribution."

The pertinent provisions of the statute authorizing the recovery for wrongful death are as follows:

"The damages recovered are directed to be distributed to the widow and next of kin, in the proportions provided by law in relation to the distribution of personal estates left by persons dying intestate."

On page 199 of the opinion we find the following:

"The decedent left surviving her husband and no children, but also one brother and seven sisters. On the trial her brother and sisters were admitted to be next of kin."

In the opinion we then find the following:

"The husband, who was next of kin to his deceased wife, and hence the sole beneficiary in the action, was wholly ignored by the court."

"The brother and sisters of the deceased were recognized and treated, before the jury, as the next of kin and the sole beneficiaries in the action, when, in law, they had no such standing, and no rights to be considered on the question of damages."

In the case of Schroth, Admr. v Noble et, 91 Oh St 439, the term "next of kin" as used in this statute refers to those persons who

take intestate property under the statute of descent and distribution. Citing **Steele, Admr., v Kurtz, 28 Oh St 191.**

The case of **Doyle v R. R. Co., 1 Oh St 184,** is also applicable on this issue.

. It is our concluison that the words "and other next of kin of the decedent" can only be given application where there are no surviving spouse or children. If the decedent leaves a surviving spouse and/or children, then such spouse and/or children are the next of kin.

The Legislature in their wisdom specifically named surviving spouse and children as the persons for whose benefit actions for wrongful death may be maintained. Had they used merely the general designation "next of kin" the same result would have been accomplished under the law as it now exists, because the surviving spouse and surviving children are next of kin.

The Legislature in specifically mentioning spouse and children, thereby secures to these designated individuals the fruits of recovery in a wrongful death action, even though the Legislature at some future time might change by legislative enactment the order of descent and distribution and take out surviving spouse or surviving children from the classification of next of kin.

Having made the specific provision for the surviving spouse and surviving children, it was necessary to make a further provision in the event the decedent left no surviving spouse or children. This is provided for by the words "and other next of kin of the decedent".

From what we have thus far said it follows that since Mrs. Browning does not come within the classification of next of kin, the law does not permit her to recover any amount and therefore the $1500.00 allowed to her can not stand. This conclusion arises as a matter of law and hence this amount awarded to Mrs. Browning will be set aside and held for naught. In other words, final judgment.

Otherwise we find no prejudicial error and with the above exception the judgment will be affirmed.

HORNBECK and GEIGER, JJ, concur.