**TERMUHLEN, Admr., etc., Appellee. v CAMPBELL, et, etc., Appellants.**

Ohio Appeals, 1st District, Hamilton County.

No. 6140. Decided December 14, 1942.

R. E. Simmonds, Jr., Cincinnati, for appellee.

Carson Hoy, Cincinnati, and C. Watson Hover, Cincinnati, for appellants.

### OPINION

By ROSS, J.

The plaintiff was awarded a verdict by a jury in the Court of Common Pleas of Hamilton county, upon which judgment was en-

tered in his favor. He sued as Administrator of Charles Termuhlen, who met death while driving upon Twightwee Road in Hamilton County, on New Year's Eve 1937-1938, at approximately one o'clock A. M. The decedent was slightly over eighteen years of age.

The action was maintained for the wrongful death of the decedent alleged to be due to the negligence of the County Commissioners of Hamilton County in several respects. In view of the conclusions reached by this Court it becomes unnecessary to determine whether or not the Commissioners were negligent. The undisputed evidence conclusively shows that the decedent was guilty of negligence in the operation of the motor vehicle he was driving and that such negligence was the proximate cause of his death.

Briefly stated, the pertinent facts justifying this conclusion are as follows:

The decedent left a party of friends with whom he had been drinking at Listermann's on Spring Grove Avenue in the City of Cincinnati, some short time after midnight on January 1, 1938. The record does not indicate the decedent had been drinking to excess. In company with a friend, the owner of the automobile, in which decedent ultimately met death, and a lady companion, he went to his aunt's home to another gathering of older people, who were celebrating the advent of the New Year. This location was some considerable distance away from the first place mentioned and located in Reading, Ohio. The decedent stayed there some fifteen minutes. It had taken from twenty to thirty minutes to drive from Listermann's to the residence of the Aunt in Reading. Among those present at the aunt's home were the Aunt of the decedent and the parents of the decedent.

Without the knowledge of his friend, the owner of the automobile, the decedent took it and in company with his lady companion drove to Loveland, which is approximately fifteen miles from Reading, Ohio. He took the young lady to her home and started to drive back alone toward Reading, along Twightwee Road, which for a considerable distance runs along the west bank of the Little Miami River. At a point some few miles south of Loveland, the County Commissioners were widening Twightwee Road. At this point a culvert existed under the road. The banks on either side of the road were high and precipitous. There was a gravel berm some two or three feet in width along the paved portion of the road, which was at this point approximately eighteen feet in width. Just to the north of the culvert walls a driveway led into a place called the "Casino". The driveway as it entered the highway flared out, the southern edge reaching almost to the culvert.

Twightwee Road for some distance on either side of the culvert turned to the east and west and was designated by a proper road sign some distance to the north of the culvert (the direction from which decedent was driving) as a "Winding Road". A large steel drum such as is commonly used to contain oil was placed at the north end of the culvert. The drum rested partly on the gravel

berm and a few inches over on the paved portion of the highway. There were no other barricades or guard rails protecting the culvert. On the opposite side of the road was a barricade protecting the new installation of road material, thus cutting down the width of the road from 18 to 16 feet. Some little distance to the south of the culvert a pile of road screenings had been dumped along the road—extending some two to three feet upon the hard surface. The screenings had been dumped between two logs 6 to 8 inches in diameter, which lay parallel to the road.

Previous to the time when the Commissioners had employed a contractor to improve the highway, guard rails protected both the approaches to the culvert and the high bank along the river. One of the residents near the culvert had been induced to place warning lights upon the drum and barricades, but not having been furnished with money to purchase oil for the lanterns, failed to place such lights on the night of New Year's Eve, so that none of the obstructions to traffic mentioned were lighted at the time here under consideration.

At approximately 1:10 A. M., the decedent driving his friend's automobile southwardly along Twightwee Road approached the culvert. From the opposite direction an automobile moving northwardly passed the decedent opposite the Casino driveway, and immediately thereafter the car driven by decedent "sideswiped" the drum in front of the culvert, swerved eastwardly across the highway—ran through the pile of screenings, then turned a little to the east and ran over the bank on the east side of the road, down the declivity to the river, where it disappeared in some 12 feet of water. The river was at high stage, the current swift, and the automobile was turned around. The decedent was unable to extricate himself from the vehicle, and was drowned. The fog or yellow lights burned after the automobile sank in the river, and through these the vehicle was located. No other lights were burning on the automobile. When it was finally removed from the river, the tie rod running parallel to the front of the machine was found to be bent, convexly toward the front of the car.

A number of witnesses who happened to be observing the highway at this point testified to the facts covering the collision with the drum and the subsequent course of the vehicle.

It is difficult to understand how reasonable minds could come to any conclusion other than that the collision of the automobile driven by decedent with the drum was the direct proximate cause of his death.

The Supreme Court has very definitely applied the provisions of §12603 GC (Now §6307-21 GC) to situations much the same as that here involved. The effect of these decisions is that one driving a motor vehicle into a static object, whether in the daytime or nighttime cannot recover for injuries received by him. Smiley v Arrow Spring Bed Co., 138 Oh St 81. In this case the Court reviews the holdings of the Supreme Court of this State and of courts of

other jurisdictions. Where an object is propelled into the path of a vehicle suddenly it is pointed out the statute may ██ have no application. Neither bends nor twists in the highway—crests in the road, dim lights, fog, sleet, or rain, nor blinding lights of approaching vehicles excuse one from the duty to drive so that the vehicle may be brought to a stop within the assured clear distance ahead.

The eye witnesses to the tragedy testified that both the decedent and the automobile approaching him from the opposite direction were proceeding at reasonable speed just before the collision with the drum. The logic of the situation, however, is inescapable.

It cannot be supposed the decedent deliberately drove into the drum. If he did, of course, his Administrator, the plaintiff, cannot recover. Then he either saw it or did not see it. If he saw it, he evidently saw it too late to stop the automobile, and he comes within the purview of the statutes rendering him guilty of negligence per se. If he did not see it, either he was not observing where he was driving or the lights which he was employing were not of sufficient intensity to illuminate the object far enough ahead to permit him to stop the machine when its presence became apparent. In either case his negligence is obvious and conclusive against him. He may have been and probably was led astray by the extra width of passable road caused by the Casino drive and the normal width of the highway. This accompanied by the fact that such situation gradually narrowed as the south side of the drive terminated almost at the culvert. But this condition was wholly static. It could have been seen. It was observed by witnesses more than one hundred feet away. There was some evidence the night was misty. This only increases the burden of caution resting upon the driver of the vehicle.

This Court in Mossman v City of Cincinnati, 34 N. E. (2d) 246 considered the duties of the operator of a motor vehicle with reference to static obstacles in the path of traffic. While the law as to installation of driving lamps has been somewhat modified recently by legislation, the law stated in the Mossman case is applicable to the facts involved in the instant litigation. **Section 6310-1 GC**, effective 6-30-1933 was not repealed until 9-6-41, the analogous sections are now **6307-85** and **6307-87**. We quote a portion of §6310-1 **GC**, applicable to the facts in the instant case, **109 Ohio Laws, p. 219:**

"Whenever there is not sufficient light within the limits of the traveled portion of the highway to make all vehicles, persons, or substantial objects clearly visible within a distance of at least two hundred feet, the forward lights which a motor vehicle, except commercial vehicles. as hereinafter provided, is required to display, shall, when the motor vehicle is in motion, throw sufficient light ahead to show any person, vehicle, or substantial object upon the roadway straight ahead of the motor vehicle for a distance of at least two hundred feet."

We find that as a matter of law the decedent was guilty of negligence, and we also find the evidence is conclusive that this negligence was the proximate cause of his death. So ██ finding, we reverse the judgment of the Court of Common Pleas and here render the judgment which the trial court should have rendered in favor of the defendants.

MATTHEWS, PJ., concurs.

### APPLICATION FOR REHEARING

No. 6149. Decided January 18, 1943.

By ROSS, J.

The decedent was between the ages of 18 and 19. He worked daily loading and driving a delivery truck which he used in peddling food stuffs. The opinion describes his actions upon the night he met his death. These actions were not those of a child. Obviously there would be little difference in his capabilities and judgment at the age at which he was killed and two and a half years later when he reached the age of 21. Certainly, the effort of the plaintiff to show his financial loss to his family does not tend to indicate he was immature or a child. It is true he was under the age of 21, considered by Ohio law to be the age of majority for most purposes. **Section 14603 GC,** now §6307-21 GC, is a penal statute. The decedent would have been subject to the penalties of the statute had he been prosecuted for its violation. **21 O. Jur. 905.**

He would have been civilly liable had be caused another injury through violation of the statute. **21 O. Jur. 902.**

In **Wery v Seff, et al., 136 Oh St 307,** the minor, aged 15, was charged with negligence as follows:

"The negligence charged against the younger Seff was that he violated §568-1 of the Ordinances of the city of Akron, in the manner of making the left-hand turn when Mrs. Wery had the right of way because of the color of the traffic light; that he failed to keep a lookout and to control the speed and direction of the automobile so as to avoid the collision; that he failed to give any warning of his intention to make the turn; and that he drove the automobile in a way to endanger the life and limb of Mrs. Wery."

And, at page 310 of the opinion, it is stated:

"Neither can there be any doubt that actionable negligence was charged against Robert E. Seff. That a minor, especially of the age of Robert, is civilly liable for torts of the kind described in the petition is too well established to require comment. **21 O. Jur. 902, §43; 14** Ruling Case Law, 259, §36; 31 Corpus Juris, 1090, §203."

It seems strange to hear the contention that this minor may borrow an automobile without permission, drive it in violation of the laws of the State, thereby lose his life, and yet claim compensasation for a defective condition of a highway which would have been inoperative to cause him damage had he complied with the mandate of the statute and driven at such speed, that he could stop within the assured clear distance ahead. He struck an oil drum on the edge of the highway placed there to guard the edge of a culvert.

In **Fightmaster v Mode, 31 Oh Ap, 273,** the child involved was 13 years old. In our opinion, there is a vast difference in the responsibility of a boy 13 and one between 18 and 19. Certainly, in time of war, such difference is recognized.

We see no reason for receding from our former conclusion that the decedent violated the statute and that such violation was the proximate cause of his own death and that he was chargeable with negligence per se. We find no controlling authority to the contrary. He was old enough to operate an automobile on the highway of the state. He should be old enough to be held responsible even in a civil action for the violation of statutes designed to govern the operation of motor vehicles upon the highway.

Complaint is made as to a misstatement of fact in the opinion, in that it is stated that: "The walls of the culvert on the west side of the road (the side on which the decedent was driving) extended more than three feet above the level of the road." We have deleted this statemnt from the opinion. The photographs seem to sustain the contention of appellee that the culvert walls did not extend above the level of the roadway. However, such change has no effect upon our conclusion.

The evidence is that the decedent hit the drum which was an object which should be easily discernible even at night. On page 128 of the record an eye witness for plaintiff in speaking of the collision of the automobile with the drum was asked:

"Q. What happened to the oil drum, John?
A. Oh, it rolled a little ways."

Again, a plaintiff witness testified, record, page 147:

"Q. What struck the drum?
A. The automobile."

We find no reason for altering our conclusion in the case, and the application for a rehearing is denied.

MATTHEWS, PJ, concurs.