ICSMAN, ADMR., APPELLEE, *v.* THE NEW YORK CENTRAL RD. CO. ET AL., APPELLANTS.

48

(No. 611—Decided June 21, 1948.)

*Messrs. Murray & Murray,* for appellee.
*Messrs. Flynn, Py & Kruse,* for appellants.

CARPENTER, J. This was an action for wrongfully causing the death of Beatrice Icsman. The verdict and judgment were for the plaintiff, and defendants appealed on questions of law. Their assignments of error are that judgment for them should have been ordered as a matter of law, on either their motions for a directed verdict or their motions for judgment notwithstanding the verdict.

About midnight November 4, 1944, decedent sustained fatal injuries while riding as a passenger in an automobile driven by Robert Schnell when it collided with the rear trucks of the locomotive tender of defendant New York Central Railroad Company, which was standing across Camp street in Sandusky on an industrial spur track. The defendant New York, Chicago & St. Louis Railroad Company was the owner of the track. Under Section 8814, General Code, both lessee and lessor of a railroad are jointly liable for the negligence of either.

It is admitted in the answer that a crossing sign was not maintained at that crossing as required by Section 8852, General Code. It is undisputed that no fixed or hand signs or signals were present, warning travelers on Camp street from the north of the presence of a train on the crossing. These facts, together

with the allegation that no whistle or bell was sounded by the engineer as the locomotive approached, as required by Section 8853, General Code, constitute the specifications of negligence.

The locomotive was engaged in switching some cars on the industrial sidings on the west side of the street, and under the circumstances a whistle sounded at the time and place required by the statute would not have warned the driver or occupants of the automobile that there would be a train across the street when they got there, so obviously this may be eliminated from consideration. *Kramers* v. *Chesapeake & Ohio Ry. Co.,* 60 Ohio App., 556, 22 N. E. (2d), 227; *Reed, Admr., v. Erie Rd. Co.,* 134 Ohio St., 31, 15 N. E. (2d), 637.

That the bell was ringing at the time of the collision was the positive testimony of all the witnesses on that subject save one of the occupants of the automobile, and she only said she did not hear it. So this element may be disregarded.

This left two fact questions before the court when it considered the defendants' motions for judgment.

1. Could the failure of the defendants to provide the statutory crossing sign as required by Section 8852, General Code, have been a proximate cause of the death?

2. Were there "special circumstances rendering the crossing peculiarly hazardous" at that time?

The answer pleaded that the death was "due entirely to the carelessness and negligence of the driver of the car * * * and to said decedent." This was immaterial and added nothing to the general denial, except the hazard of error, as happened in *Gottesman, Admr., v. City of Cleveland,* 142 Ohio St., 410, 52 N. E. (2d), 644.

The issue of contributory negligence was not here raised in the pleadings, and, in the opinion of this court, not by the evidence. The negligence of the driv-

er of the automobile could not be imputed to his passenger, the decedent. Because of this, the numerous decisions cited and discussed in the briefs that related to the negligence of drivers at grade crossings are not in point here.

The death of a passenger in an automobile was the subject of the claim in *Reed, Admr., v. Erie Rd. Co., supra.* That case had many points of similarity with the case at bar, except that there the crossing involved was "an ordinary country crossing, with an unobstructed view" of the tracks, the train was moving and the automobile struck the forty-second car back from the locomotive. The statutory crossing sign was on the opposite side of the track and, because of the train, was not visible to the travelers with the decedent. It was urged that there should have been signs on both sides, but this was disposed of by the comment in the opinion, that the presence of the train on the crossing "affords an effective danger signal to approaching travelers." That observation furnishes a negative answer to the first question above propounded.

In the second paragraph of the syllabus in *Capelle v Baltimore & Ohio Rd. Co.,* 136 Ohio St., 203, 24 N. E. (2d), 822, the court expressed the rationale of its decisions on this phase of grade-crossing collisions. In that case the automobile in which plaintiff was riding as a passenger collided with a train standing on a grade crossing in the open country. That paragraph of the syllabus is as follows:

"In general, a person who drives, or is driven, into the side of a railroad train standing or moving over a grade crossing cannot, in the absence of special circumstances rendering the crossing peculiarly hazardous, recover from the railroad company for injuries received thereby."

Were there such special circumstances in the case at bar?

Immediately to the north of this crossing on Camp street, the direction from which the Schnell automobile was approaching, there was a subway where the main line of the New York Central railroad crosses that street on a separate grade. The spur grade crossing was just at the crest of the upgrade on the south side of the subway.

The defendants called as a witness a civil engineer who testified that 69.3 feet north of the south rail of the spur track the center of the pavement on Camp street was .41 of a foot lower than that rail; 100 feet north of the north rail, it was 1.24 feet lower; 105 feet, 1.42 feet; and 180 feet, 5 feet lower. It was a very dark and cloudy night and there was some evidence that it was misting at the time of and before the collision, all witnesses agreeing that a light rain was falling soon after.

It appears also that Camp street was a much-traveled thoroughfare, but there was no other traffic on it at the time in question. The locomotive engineer testified that the engine had stopped on the crossing "forty or fifty seconds" before the collision occurred.

Due to illness, the driver of the automobile was not able to testify, and the only other occupant of the auto, a woman who rode in the rear seat, testified that when they were about fifteen feet from the train, "I just looked up and there the engine was. I was looking straight ahead and I looked up and there was the train."

The headlights on the automobile were lighted, but there was no evidence as to how much, if at all, the light from them as the automobile came up that rather sharp grade illuminated the locomotive tender.

Although a railroad company is required by the

statutes to provide certain signs and signals at grade crossings for the protection of travelers on the highway, it is sometimes said that these only represent the minimum of care required. If the situation of a crossing is such that ordinary care may require additional safeguards, the company may be negligent in failing to provide them, and whether it is is usually a question of fact for the jury. *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S., 408, 36 L. Ed., 485, 12 S. Ct., 679; *Railway Co.* v. *Schneider,* 45 Ohio St., 678, 17 N. E., 321; *Weaver* v. *Columbus. S. & H. Ry. Co.,* 76 Ohio St., 164, 81 N. E., 180; *Franklin* v. *Nowak,* 53 Ohio App., 44, 4 N. E. (2d), 232; *Loos* v. *Wheeling & L. E. Ry. Co.,* 60 Ohio App., 527, 22 N. E. (2d), 217.

In the opinion, at page 551, in the recent decision of *Woodworth, Admx.,* v. *New York Central Rd. Co.,* 149 Ohio St., 543, 80 N. E. (2d), 142, this principle was recognized when the court said:

"The law does not require railroad companies to place signals, gates or flashers at highway crossings unless ordered by the Public Utilities Commission, or unless such crossings are especially dangerous or there exist special circumstances which render such precautions necessary for the public safety." Citing *Railway Co.* v. *Schneider, supra.*

Whether, in the instant case, the special circumstances which existed at the crossing in question rendered it peculiarly hazardous that night as the Schnell automobile approached from the subway, and whether the defendants exercised ordinary care to safeguard against those hazards, presented fact questions for the jury, and the court did not err in so submitting them. Its judgment is affirmed.

*Judgment affirmed.*

Conn and Fess, JJ., concur.