Colonial Trust Company, Admr., Appellant, *v.* Elmer C. Breuer, Inc.

Argued September 29, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John E. Evans, Jr.,* with him *Evans, Ivory & Evans,* for appellant.

*Ernest C. Reif,* with him *Dickie, Robinson & McCamey,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, November 14, 1949:

This case, as argued, calls for an interpretation of the phrase "assured clear distance ahead" as contained

in the statutory mandate that no person shall drive a motor vehicle upon a highway at a greater speed than will permit him to bring it to a stop within such distance.

At some time around the hour of midnight a tractor with two attached flat-bottom trailers, operated by defendant's employe, was being driven in a southerly direction approaching the city limits of Ravenna, Ohio. On the second or hindmost trailer there were coils of steel which, according to plaintiff's testimony, had been improperly and insecurely anchored, with the result that one of them fell off as the trailers weaved along the highway; in falling it carried with it a black tarpaulin covering. The operator, not realizing what had occurred, proceeded on to Ravenna, leaving the coil, which was about 4 feet in diameter and 2½ feet high, lying in the middle of the westerly or southbound lane of the black-top macadam road. Shortly thereafter plaintiff,[1] operating a tractor-trailer outfit from Cleveland toward Pittsburgh, was proceeding south over this same road at a speed of about 30 miles per hour when the undimmed headlights of a truck moving in the opposite direction temporarily blinded him as it passed. He thereupon for the first time saw, at a distance of 40 feet ahead of him, the coil of steel, but he testified that it appeared to him to be merely a patch in the road, its real character being indiscernible because of the black tarpaulin covering on the black-top highway. Accordingly he made no effort to slacken his speed or to stop, and it was only when he was practically on top of the obstruction, or within a distance of not over 10 feet from it, that he discovered its true nature; it was then, of course, too late to avoid running into it. As a result of the collision his tractor-trailer swerved completely off the road and he sustained injuries for which he seeks

---

[1] Plaintiff, Silas M. Sawyer, died after the present appeal was taken and the Colonial Trust Company was substituted as administrator of his estate.

to recover damages in the present suit. At the conclusion of his testimony the trial judge entered a compulsory non-suit on the ground of contributory negligence as a matter of law. The present appeal is from the refusal of the court en banc to remove the non-suit.

The action of the court was based on its conclusion that plaintiff had violated the Ohio statute (formerly section 12603, now section 6307-21 of the Ohio General Code) the terms of which are practically identical with our own Act of May 1, 1929, P. L. 905, section 1002; it provides that motor vehicles driven on a public highway must not be operated at a speed that will prevent their being stopped within the assured clear distance ahead. The question arises, then, as to the meaning of this latter phrase, that is to say, whether the word "assured" is to be interpreted in an objective or a subjective sense. Does it mean the *actual* clear distance ahead, or does it mean what *appears* to a reasonably prudent driver, exercising due care, to be the clear distance ahead? To "assure" means to render safe, to make secure, but it also means "to give confidence to"; "to make (one) sure or certain"; "to put (a person) beyond doubt" (Webster's New International Dictionary, 2nd ed.); "to cause to feel certain"; "give confidence to"; "convince" (Funk & Wagnalls' New Standard Dictionary). It would seem wholly unreasonable and unjust to hold that the operator of a motor vehicle was guilty of a violation of the statute and therefore subject to the criminal penalty prescribed by it and to the characterization of his conduct as contributorily negligent because he did not lessen the speed of his car in the face of what was actually an obstruction on the roadway but was so camouflaged or deceptive in appearance that even a reasonably careful driver would not have been able to *realize* that it was such until he was actually upon it. In *Clamper v. Philadelphia*, 279 Pa. 385, 124 A. 132, and again in *Mumbower v. Weaver*, 282 Pa. 605,

128 A. 535, a driver of an automobile was held not to be guilty of contributory negligence as a matter of law merely because he had failed to observe a rope stretched across the highway. In *Lane v. E. A. Mullen, Inc.,* 285 Pa. 161, 131 A. 718, it was held that the driver of an automobile was not to be convicted of contributory negligence as a matter of law because his car ran into a coal box which projected out from the side of a steam shovel on a public street but was above the light cast by the rays of his headlights. In *Rowland v. Canuso,* 329 Pa. 72, 196 A. 823, where a motorist collided with a metal platform which projected from the sides of a concrete mixer parked in a city street it was held that, since the platform was not clearly discernible in the darkness under the prevailing conditions of lighting and was visible in the beams of his headlights only for a distance of some 25 to 30 feet, it could not be held as a matter of law that the operator of the car was chargeable with contributory negligence in failing to see and avoid it. In *Graham v. Philadelphia,* 19 Pa. Superior Ct. 292, the Court held, in an opinion by RICE, P. J., that the driver of a wagon was not guilty of contributory negligence as a matter of law because of his failure to see a small hole in the asphalt surface of a street, the hole being surrounded, if not partially covered, by cinders. (cf. *Diederichs v. Duke,* 234 Mich. 136, 207 N. W. 874, where the failure of the driver of an automobile to see a small strip of icy pavement on the roadway was held not to constitute contributory negligence as a matter of law).

Plaintiff in the present case testified that even at a distance of but 40 feet the coil of steel, because of its tarpaulin covering being of the same black color as that of the macadam road, appeared to be merely a patch on the surface of the highway and not a physical obstruction on the road. He therefore saw no occasion

to reduce his speed of 30 miles per hour and it was not until he was right upon it that he realized its true nature. Whether his testimony was reliable, whether he was in fact as attentive to his duties as he should have been, whether the appearance of the object was in reality as deceptive as he claimed it to be, were questions for the fact-finding tribunal, namely, the jury, to decide.

Defendant properly points out that, since the accident happened in Ohio, it is the law of that State which controls, and if plaintiff's conduct would be adjudged in Ohio to constitute contributory negligence as a matter of law our courts would be bound to accept and follow that viewpoint. "Where by the law of the place of wrong, the liability-creating character of the actor's conduct depends upon the application of a standard of care, and such standard has been defined in particular situations by statute or judicial decision of the law of the place of the actor's conduct, such application of the standard will be made by the forum": Restatement, Conflict of Laws, §380(2). To this it may be added that "the forum will apply the standard in the same manner although under the local law the case would have been for the judgment of the jury on the facts in question": §380, comment b. The phraseology employed in the Ohio Code is the same as that of our own statute, but defendant insists that it has received in Ohio a different interpretation. We find nothing in the decisions of the Ohio courts to justify that contention. It is true that they have said in judicial opinions that the operator of a motor vehicle is required to "stop within the distance at which he can see a *discernible object* obstructing his path": *Gumley v. Cowman,* 129 Ohio St. 36, 40, 193 N. E. 627, 629; *Smiley v. Arrow Spring Bed Co.,* 138 Ohio St. 81, 84, 87, 88, 33 N. E. 2d 3, 5, 7. It is also true that in *Kormos v. Cleveland Retail Credit Men's Co.,* 131 Ohio St. 471, 3 N. E. 2d 427, a parked

automobile of the same color as the pavement and spattered with mud, in *Termuhlen v. Campbell,* 71 Oh. App. 285, 48 N. E. 2d 891, a large steel drum, in *Gatton v. F. J. Egner & Son, Inc.,* 79 Oh. App. 358, 73 N. E. 2d 812, an olive-colored unlighted truck, and in *State v. Cheatwood,* 84 Oh. App. 125, 82 N. E. 2d 770, the abutment of a bridge, were all held to be "discernible objects", as they clearly were, but in none of those cases was there any apparent intention to ascribe to the word "discernible" a fixed and rigid meaning applicable to every possible situation. The word "discernible" ordinarily implies something more than "visible". "Visible" means perceivable by the *eye* whereas "discernible" means *mentally* perceptible or distinguishable,—capable of being "discerned" by the *understanding* and not merely by the senses. In *Sidle v. Baker* 52 Oh. App. 89, 99, 3 N. E. 2d 537, 542, it was said that "whether one has an assured clear distance ahead may turn on whether *he may assume that to be the fact.* That assumption, where permissible, defines and determines the assured clear distance ahead. It is as essential to the definition of the statutory phrase as the requirement that one see what may be observed by looking, and that he keep in mind those unseen dangers which he is bound to anticipate. The *subjective* test includes them all." (Italics supplied.) We see nothing, therefore, in the decisions of the Ohio courts to indicate that plaintiff in the present action would, in Ohio, have been held criminally guilty of a violation of the Ohio code or, in a civil action, guilty of contributory negligence as a matter of law, if the fact be, as a jury might well find, that he was reasonably justified in believing that the dark coloring which he saw ahead of him was not a physical object on the highway but merely a patch in the macadam road.

Defendant argues that inasmuch as plaintiff's witness Hicks, a pedestrian on the highway, testified that

he saw the object in the highway plaintiff should have seen it likewise; it does not appear, however, at what distance Hicks did see it; moreover, even if his testimony was not in harmony with that of plaintiff himself the factual question involved would still be one for the jury to decide: *Whitman v. Stipp,* 270 Pa. 401, 407, 113 A. 567, 568, 569. And while the failure of plaintiff to slow down during the time he was temporarily blinded by the lights of a passing truck might ordinarily weigh seriously against him on the question of contributory negligence (*Vierling v. Fry,* 354 Pa. 66, 46 A. 2d 473), if his story is to be believed the speed of his car had no causal relation whatever to the accident. According to his version the accident would have occurred no matter how slowly he would have been traveling, it being caused, not by his *inability* to stop the car because of its speed [2] (which is the evil with which the statute is concerned) but because, seeing no need of attempting to stop or to slow down, he *voluntarily* refrained from doing so. Under his testimony, therefore, the statute in regard to the "assured clear distance ahead" would have no application, and the question whether plaintiff was guilty of contributory negligence would depend merely upon common law principles: cf. *Salvitti v. Throppe,* 343 Pa. 642, 23 A. 2d 445; *Ennis, Administratrix, v. Atkin,* 354 Pa. 165, 47 A. 2d 217.

The learned trial court was in error in entering a compulsory non-suit. The jury should have been allowed to determine whether decedent was guilty of contributory negligence.

The order refusing to take off the non-suit is reversed, and a new trial is awarded.

Mr. Justice Drew dissents.

---

[2] There is no testimony in the record that he would not have been *able* to stop within the distance of 40 feet which intervened between his car (after it had passed the truck) and the point where the steel lay in the highway.