410 F.2d 1311
 Harry Richard ARRASMITH, Norma Arrasmith, Robert Brewer, Administrator of the Estate of Paul Gorman, Deceased, Albert Butts and Thomas Butts, Plaintiffs-Appellants,
v.
The PENNSYLVANIA RAILROAD CO., Defendant-Appellee.
 No. 18612.
 United States Court of Appeals Sixth Circuit.
 May 16, 1969.
 
 Bernard Bernard, Columbus, Ohio, for appellants; Teaford & Bernard, Columbus, Ohio, on brief.
 Francis S. McDaniel, Dayton Ohio, for appellee; Altick & McDaniel, Dayton, Ohio, on brief.
 Before WEICK, Chief Judge, and PHILLIPS and EDWARDS, Circuit Judges.
 EDWARDS, Circuit Judge.
 
 
 1
 This is a railroad crossing collision case. Plaintiffs-appellants were passengers in a car traveling east on Grove Avenue in the city of Xenia, Ohio, at approximately one o'clock in the morning on April 4, 1964. The car they were in came to a railroad switch track marked only by a crossbuck sign and crashed into a boxcar which was standing completely blocking Grove Avenue. One of the passengers was killed and the other passengers allege serious injuries.
 
 
 2
 The matter was heard by a United States District Judge in the Southern District of Ohio, Western Division, on pleadings, depositions, affidavits, photographs and other exhibits. He made a finding of fact and then granted defendant's motion for summary judgment, holding that the railroad had violated no statutory duty and was free from negligence as a matter of Ohio law. Only the passengers involved in the accident appeal.
 
 
 3
 As we have noted, this accident happened in Ohio. Hence, of course, the District Court and this court are required to apply Ohio law. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Ohio law the contributory negligence, if any, on the part of appellants' driver cannot be imputed to his passengers. Cincinnati Street Ry. Co. v. Wright, 54 Ohio St. 181, 43 N.E. 688, 32 L.R.A. 340 (1896); Canterbury v. Pennsylvania R.R., 158 Ohio St. 68, 107 N.E.2d 115 (1952).
 
 
 4
 Under federal law, as well as under Ohio law (Ohio Rev.Code § 2311.041 (Supp.1968)), on a motion for summary judgment the evidence is to be construed most favorably towards the party opposing the motion. E. g., United States v. Diebold, 369 U.S. 654, 82 S. Ct. 993, 8 L.Ed.2d 176 (1962); DeWitt Motor Co. v. Chrysler Motors Corp., 391 F.2d 912 (6th Cir.1968); Rogers v. Peabody Coal Co., 342 F.2d 749 (6th Cir. 1965). In this last case this court said:
 
 
 5
 "Summary judgment should be granted only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is and no genuine issue of fact remains for trial. The purpose of the rule is not to cut litigants off from the right to trial by jury if they really have issues to try. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944).
 
 
 6
 "In the instant case, plaintiff seeks recovery based upon defendant's alleged negligence. This Court has previously noted that there is eminent authority in support of the proposition that issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner. Aetna Insurance Company v. Cooper Wells & Company, 234 F.2d 342, 344 (6 Cir. 1956), citing 6 Moore's Federal Practice (2d ed.) § 56.17 [42] at p. 2232 and cases cited at note 4 therein. It is only in the exceptional negligence case that the rule should be invoked. Furlong v. Stichman, 24 F.R.D. 400 (D.C.S.D.N.Y.1959). And even where the trial judge reasonably may surmise that plaintiff is unlikely to prevail upon a trial, that is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them. Harl v. Acacia Mutual Life Insurance Company, 115 U.S.App.D.C. 166, 317 F.2d 577, 580 (1963) citing with approval Sprague v. Vogt, 150 F.2d 795, 801 (8 Cir.1945)." Rogers v. Peabody Coal Co., supra at 751.
 
 
 7
 Appellants claim (or their affidavits and exhibits on favorable view show): 1) This accident occurred on a dark and overcast night in an industrial area of a city. 2) The driver of the car in which plaintiffs were riding was traveling at 25-35 miles per hour. 3) It involved an industrial switch track crossing over a city street. 4) All the railroad cars involved in the operation had been moved out of the plant yard but the last one had been left stopped over the crossing without any necessity for this being done. 5) The plant building and fence abutted closely upon the street on appellants' right, two shacks and trees abutted on the left, and there was a hill ahead, all of which facts served to obliterate any silhouette of the train. 6) The boxcar was situated completely astraddle of the street with the wheels off the traveled portion to each side. 7) The boxcar body was three and one-half feet above the pavement and hence out of the reflection of the headlights on appellants' car turned to low beam. 8) There were no lights showing on the freight car or the train and no street light of any kind closer than 500 feet. 9) The train crew had a stock of fusees available in the engine, had not employed them prior to the accident, but did set them out afterward.
 
 
 8
 An even more succinct summary of appellants' position is that a proximate cause of the accident was the following:
 
 
 9
 NOTE: OPINION CONTAINING TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 And that this was the result:
 
 10
 NOTE: OPINION CONTAINING TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 11
 It should be noted that the first picture, Exhibit A, was prepared and filed by appellee railroad as a representation of what plaintiffs' driver could have seen on the night in question at a distance of 50 feet with his headlights on low beam.
 
 
 12
 As we see the matter, if we assume the facts above, as settled law on this appeal requires us to do, in order to affirm the District Court we would have to come very close to saying that in Ohio a railroad at a grade crossing can do no wrong. This is not the rule of law in Ohio, strict as its rules of law pertaining to grade crossing accidents may be.
 
 
 13
 The fundamental statement of position of the Ohio Supreme Court on the relative rights of highway users as opposed to a railroad at a grade crossing is as follows:
 
 
 14
 "The right of a railroad company to enjoy the use of its road at the crossing of a common highway, and the right of the traveling public to use the highway, are co-ordinate and equal. Reasonable care and prudence must be exercised by each, in the use of the crossing, so as not to interfere unnecessarily with the other." Pittsburgh, Ft. Wayne & Chicago Ry. v. Maurer, 21 Ohio St. 421 (1871); City of Cincinnati v. Luckey, 153 Ohio St. 247, 250, 91 N.E.2d 477, 479 (1950).
 
 
 15
 Thus fundamental Ohio law imposes the duty of reasonable care at a grade crossing equally upon the railroad and the public.
 
 
 16
 Ohio has also, of course, enacted an assured clear distance rule by statute. The statute reads in pertinent part:
 
 
 17
 "No person shall operate a motor vehicle, trackless trolley, or streetcar in and upon the streets and highways at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle, trackless trolley, or streetcar in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead." Ohio Rev.Code § 4511.21 (1965).
 
 
 18
 It has been said that the Ohio Supreme Court has given this statute the strictest interpretation of any state in the union with a similar rule.[1]
 
 
 19
 The assured clear distance rule, however, is directly applicable, in the words of the statute, to the operator of an automobile and establishes his negligence as a matter of law if he fails to drive in accordance with the terms of the statute. The great majority of cases in Ohio decided in relation to the assured clear distance rule are cases in which the Ohio courts have held that the driver of a vehicle was barred from recovery by his contributory negligence because of violation of the assured clear distance statute. E.g., Woods v. Brown's Bakery, 171 Ohio St. 383, 171 N.E.2d 496 (1960); Whitaker v. Baumgardner, 167 Ohio St. 167, 146 N.E.2d 729 (1957); Bickel v. American Can Co., 154 Ohio St. 380, 96 N.E.2d 4 (1950); Smiley v. Arrow Spring Bed Co., 138 Ohio St. 81, 33 N.E.2d 3, 133 A.L.R. 960 (1941). See also Carufel v. Chesapeake & Ohio Ry., 286 F.2d 193 (6th Cir.1961); Buster v. Baltimore & Ohio R.R., 252 F.2d 173 (6th Cir.1958); Berke v. Baltimore & Ohio R. R., 232 F. 2d 762 (6th Cir. 1956).
 
 
 20
 In our instant case the cases cited above are generally inapplicable because, as we have noted, under Ohio law the negligence of the driver may not be imputed to his passengers.[2]
 
 
 21
 The assured clear distance rule has, however, been held to have a bearing on the question of railroad negligence. The Ohio Supreme Court has held that when a train is stopped on a grade crossing in open country, with good visibility, "the presence of the train is [usually] adequate notice to an approaching traveler on the highway that the crossing is preempted * * *." Capelle v. Baltimore & Ohio R.R., 136 Ohio St. 203, 24 N.E.2d 822 (1940)[3]; Canterbury v. Pennsylvania R. R., 158 Ohio St. 68, 107 N.E.2d 115 (1952). Under such facts, the Ohio Supreme Court held implicitly that the train was "a discernible object" as a matter of law and no more precautions were required by the railroad to meet its standard of reasonable care than those imposed by statute. In our instant case the only statutory duty imposed on the railroad at this particular crossing was maintenance of a crossbuck sign. Ohio Rev.Code § 4955.33 (1954), as amended, (Supp.1968).
 
 
 22
 But Ohio case law also holds that at a grade crossing where "special circumstances" make the crossing "peculiarly hazardous" there may be a duty on the part of the railroad to take precautions beyond those imposed by statute. Capelle v. Baltimore & Ohio R. R., supra; Canterbury v. Pennsylvania R. R., supra; Woodworth v. New York Central R. R., 149 Ohio St. 543, 80 N.E. 2d 142 (1948); Icsman v. New York Central R. R., 85 Ohio App. 47, 87 N.E. 2d 829, motion to certify overruled, 85 Ohio App. xxxv (1948). See Hood v. New York, Chicago & St. Louis R. R., 166 Ohio St. 529, 144 N.E.2d 104 (1957); Easterwood v. New York, Chicago & St. Louis R. R., 108 Ohio App. 425, 162 N.E.2d 487 (1958).
 
 
 23
 In a leading case, the Ohio Supreme Court, discussing a decision from another jurisdiction applying the Ohio assured clear distance statute,[4] defined what it meant by "discernible object":
 
 
 24
 "The court stated that none of the cases revealed an intention to `ascribe to the word "discernible" a fixed and rigid meaning applicable to every possible situation. The word "discernible" ordinarily implies something more than "visible." "Visible" means perceivable by the eye whereas "discernible" means mentally perceptible or distinguishable, — capable of being "discerned" by the understanding and not merely by the senses.'" McFadden v. Elmer C. Breuer Transportation Co., 156 Ohio St. 430, 441-442, 103 N.E.2d 385, 391 (1952). (Emphasis in original.)
 
 
 25
 In another leading case the Ohio Supreme Court discussed the circumstances which would or would not give rise to railroad duties beyond the statutory ones:
 
 
 26
 "In the opinion by Judge Zimmerman [Reed v. Erie R. R., 134 Ohio St. 31, 34, 15 N.E.2d 637, 639 (1938)] there is the following statement:
 
 
 27
 "`There is nothing to indicate that the crossing in issue presented any features of unusual danger on the night of February 27, 1935. The impression is given of an ordinary country crossing, with an unobstructed view of appellee's track to the east and west. Under such circumstances, the appellee was not obligated to provide other means of warning than those prescribed by lawful authority. No legal duty rested on it to carry lights or reflectors on its cars, or to maintain lights, watchmen or gates at the crossing for the protection of travelers using the highway.'
 
 
 28
 "In the present case the record shows that the crossing in issue was an ordinary country one with an unobstructed view of defendant's tracks to the east and west, on which, because of a mechanical failure, a train had been stopped, blocking the highway. As the highway approached the crossing it was straight, the only variation from a perfectly level approach being a slight dip with a gradual rise from a point 150 feet away to the level of the crossing. The automobile in which the plaintiff was riding approached the crossing at 40 miles per hour and the driver apparently disregarded the three warning signs erected along the side of the road, the car being driven into the side of the standing train.
 
 
 29
 "There is nothing in the record to indicate that the driver's view was in any way obscured, and, even though his headlights were dimmed, the rise toward the track was so gradual that if he had been exercising any reasonable care his lights could not have failed to disclose the car on the crossing." Canterbury v. Pennsylvania R. R., 158 Ohio St. 68, 76, 107 N.E.2d 115, 119-120 (1952).
 
 
 30
 See also Hood v. New York, Chicago & St. Louis R. R., 166 Ohio St. 529, 534-536, 144 N.E.2d 104, 108-109 (1957).
 
 
 31
 These rules appear to have been reiterated throughout Ohio grade crossing law.
 
 
 32
 Both of these topics (i. e., discernibility of the object struck and the peculiar hazards of the crossing) are, of course, aspects of the common law of Ohio governing negligence of a defendant. They are factors which help to determine the reasonableness or unreasonableness of defendant's conduct by relating it to the foreseeability (or lack thereof) that such conduct would create the threat of unreasonable dangers to others.
 
 
 33
 The ultimate questions presented by this case are:
 
 
 34
 1) Was this accident foreseeable by the railroad (and its agents) because of the asserted lack of discernibility of the boxcar on the night in question? and
 
 
 35
 2) Was this accident foreseeable by the railroad (and its agents) because of the asserted extra hazards of this particular crossing (or by a combination of both factors)?
 
 
 36
 The ultimate question posed by this appeal is whether these questions are so clearly governed by the undisputed facts of this case as to be determined as a matter of law (as found by the District Court), or whether under the facts of this case they are questions upon which reasonable minds might disagree, in which instance they become questions of fact for jury decision?
 
 
 37
 For these answers we have turned to the case law of Ohio and sought to review it with particularity.
 
 
 38
 Cases holding defendant's negligence to be a jury question:
 
 
 39
 (a) Foreseeability as affected by discernibility of object struck:
 
 
 40
 McFadden v. Elmer C. Breuer Transportation Co., 156 Ohio St. 430, 103 N.E.2d 385 (1952).
 
 
 41
 Brown v. Wackman, 87 Ohio App. 61, 86 N.E.2d 27, 87 N.E.2d 271, motion to certify overruled, 87 Ohio App. xxxix (1949).
 
 
 42
 Miller v. City of Dayton, 70 Ohio App. 173, 41 N.E.2d 728 (1941).
 
 
 43
 Brown v. City of Columbus, 27 Ohio L.Abs. 677 (App.1938).
 
 
 44
 Transcontinental Car Forwarding Co. v. Sladden, 49 Ohio App. 53, 195 N.E. 256, motion to certify overruled, 49 Ohio App. xlviii (1934).
 
 
 45
 See also Emery v. Chesapeake & Ohio R. R., 372 Mich. 663, 127 N. W.2d 826 (1964).
 
 
 46
 Nass v. Mossner, 363 Mich. 128, 108 N.W.2d 881 (1961).
 
 
 47
 Colonial Trust Co. v. Elmer C. Breuer, Inc., 363 Pa. 101, 69 A.2d 126 (1949).
 
 
 48
 Kadlec v. Johnson Construction Co., 217 Iowa 299, 252 N.W. 103 (1933).
 
 
 49
 (b) Foreseeability as affected by extra hazards of crossing:
 
 
 50
 Icsman v. New York Central R. R., 85 Ohio App. 47, 87 N.E.2d 829, motion to certify overruled, 85 Ohio App. xxxv (1948).
 
 
 51
 Richter v. Wheeling & Lake Erie Ry., 13 Ohio L.Abs. 333 (App. 1932).
 
 
 52
 Cleveland, Chicago, Cincinnati & St. Louis Ry. v. Richerson, 19 Ohio C.C.R. 385 (1900).
 
 
 53
 See also Hewitt v. Spokane, Portland & Seattle Ry., 66 Wash.2d 285, 402 P.2d 334 (1965).
 
 
 54
 Emery v. Chesapeake & Ohio R. R., 372 Mich. 663, 127 N.W.2d 826 (1964).
 
 
 55
 Cases holding defendant to be free from negligence as a matter of law:
 
 
 56
 (a) Foreseeability as affected by discernibility of object struck:
 
 
 57
 Capelle v. Baltimore & Ohio R. R., 136 Ohio St. 203, 24 N.E.2d 822 (1940).
 
 
 58
 Canterbury v. Pennsylvania R. R., 158 Ohio St. 68, 107 N.E.2d 115 (1952).
 
 
 59
 (b) Foreseeability as affected by extra hazards of crossing:
 
 
 60
 Hood v. New York, Chicago & St. Louis R. R., 166 Ohio St. 529, 144 N.E.2d 104 (1957).
 
 
 61
 Hicks v. Baltimore & Ohio R. R., 160 Ohio St. 307, 116 N.E.2d 307 (1953).
 
 
 62
 Canterbury v. Pennsylvania R. R., 158 Ohio St. 68, 107 N.E.2d 115 (1952).
 
 
 63
 Capelle v. Baltimore & Ohio R. R., 136 Ohio St. 203, 24 N.E.2d 822 (1940).
 
 
 64
 Reed v. Erie R. R., 134 Ohio St. 31, 15 N.E.2d 637 (1938).
 
 
 65
 New York, Chicago & St. Louis R. R. v. Kistler, 66 Ohio St. 326, 64 N.E. 130 (1902).
 
 
 66
 In our review we find no "brown cow" case to guide us with certainty to a decision. The factors which these cases discuss as bearing upon discernibility and the hazards of a railroad grade crossing are these: whether the crossing was a main line crossing or a spur track; whether the crossing was in "open country" or in the city; whether the approach to the crossing did or did not have obstacles which tended to screen the automobile traveler's view of the train; whether the use of the grade crossing was both normal and necessary from the railroad's point of view; whether the day or night was clear; whether the view was obscured for some atmospheric reason; and finally, whether the object itself, by size, shape, color, or characteristics was such as to be easy or difficult to discern against the applicable background.
 
 
 67
 We have read with care the three cases relied upon by the District Judge in granting summary judgment — Carufel v. Chesapeake & Ohio R. R., 286 F.2d 193 (6th Cir. 1961); Canterbury v. Pennsylvania R. R., 158 Ohio St. 68, 107 N.E.2d 115 (1952); and Hood v. New York, Chicago & St. Louis R. R., 166 Ohio St. 529, 144 N.E.2d 104 (1957). They are, however, to our mind plainly distinguishable from our instant case.
 
 
 68
 In the first of these cases, Carufel, the plaintiff was the driver of a truck which struck the ninth car from the rear of a 167-car freight train. The freight train was traveling at 12 miles per hour on a double track line in open country with unlimited visibility as to terrain. The main line grade crossing was marked by several warning signs and was lighted by vapor lights. This court held that the fact that the night was foggy did not serve to excuse the contributory negligence of the driver which barred recovery as a matter of law.
 
 
 69
 In the second case, Canterbury, the plaintiffs were passengers in an automobile which crashed into a train which had stopped due to mechanical failure blocking a grade crossing. This crossing was also a main line double track crossing in open country with unlimited visibility. There were several signs warning of the crossing as plaintiffs' car approached it. The car actually blocking the tracks was a coal car, with hoppers at the bottom for unloading. Plaintiffs' car was traveling with dimmed lights. The court held that a slight dip and a gradual rise of the road to the crossing did not present a jury question under the "peculiarly hazardous" crossing rule.
 
 
 70
 And in the third case, Hood, the car in which plaintiffs were riding was struck at a main line double track crossing by an 18-car train loaded with ore, moving at 25 miles an hour. The driver testified that he had stopped and looked and listened, but had not seen or heard the train which was obviously bearing down upon him. There was a clear and unobstructed view available to the driver in the direction from which the train came and a statutorily required warning sign was in place. The court reversed a jury award, holding that the circumstances did not permit an instruction which allowed the jury to find that the railroad owed extrastatutory duties. But the court also remanded the case for another jury trial on the claimed negligence of the railroad in failing to have its headlight lit and its bell ringing.
 
 
 71
 In our instant case, of course, taking the facts as we are required to accept them, the view to each side of the road was completely obstructed, the freight car over the road was so painted as to be largely indistinguishable from its background, this was not an open country crossing, nor a main line crossing, but involved a spur track in a city. And finally, there was no necessity for this freight car to have been left blocking the street. These distinctions appear to us to be material and significant and we cannot agree that the cases relied upon by the District Judge warrant summary judgment in this case.
 
 
 72
 Closer to the facts of our present case are such cases as Icsman v. New York Central R. R., 85 Ohio App. 47, 87 N.E. 2d 829, motion to certify overruled, 85 Ohio App. xxxv (1948); McFadden v. Elmer C. Breuer Transportation Co., 156 Ohio St. 430, 103 N.E.2d 385 (1952); and Blowers v. Waterloo, Cedar Falls & Northern Ry., 233 Iowa 258, 8 N.W.2d 751 (1942).
 
 
 73
 The Icsman case appears to be the closest in point to the facts with which we deal in the instant case. The suit was for wrongful death of a passenger in an automobile which collided with a locomotive tender of the New York Central Railroad standing across a street in Sandusky, Ohio, on an industrial spur track. It was a dark and misty night. The street upon which the plaintiff was traveling went through an underpass under another railroad and then rose in an incline to the spur track crossing. The court held:
 
 
 74
 "Whether * * * the special circumstances which existed at the crossing in question rendered it peculiarly hazardous that night * * * presented fact questions for the jury. * * *" Icsman v. New York Central R. R., 85 Ohio App. at 52, 87 N. E.2d at 832.
 
 
 75
 And the Ohio Supreme Court overruled a motion to certify. 85 Ohio App. xxxv.
 
 
 76
 In the McFadden case, the Ohio Supreme Court considered the problem of applying the assured clear distance rule in the case of a widow who sued for the death of her husband whose automobile collided with a large roll of steel lying near the center of the highway. The roll of steel weighed 13,410 pounds and was 34 inches high and 3 feet 11 inches wide. In holding that the discernibility of this object was a question of fact for the jury in this nighttime accident case, the court noted testimony "that the roll of steel was `almost identical as far as color' with the color of the pavement." 156 Ohio St. at 439, 103 N.E.2d at 390.
 
 
 77
 In the McFadden case the Supreme Court of Ohio relied upon the Blowers case decided by the Supreme Court of Iowa. In that case a snow sweeper 10 feet wide, 10 to 12 feet high, and 35 feet long had been left by defendant street railway company parked on its tracks in the traveled portion of a street. The plaintiff was injured when he crashed into this snow sweeper at night and when there was evidence that the sweeper was covered with snow and had been left without lights. The Iowa Supreme Court held under these facts that whether the snow sweeper was a discernible object was a question of fact for the jury and not a question of law under the Iowa assured clear distance statute.
 
 
 78
 Plaintiffs-appellants sought (and seek) a jury trial in the District Court.
 
 
 79
 Of course, when the instant case is tried as a matter of disputed fact (as we think it must be) it is perfectly possible that the preponderance of the evidence will show that this asserted dark-colored boxcar on this asserted overcast night under the peculiar facts of this asserted obscured spur track crossing was in fact "clearly discernible" and that the crossing was not "peculiarly hazardous." All that we now hold is that on the favorable view of plaintiffs' complaints and submissions, it was error to decide these questions as a matter of law.
 
 
 80
 Without prejudging what may be developed at trial, we do not feel that the record as developed before the District Judge presented a case of wanton and willful misconduct. Cf. Kellerman v. J. S. Durig Co., 176 Ohio St. 320, 199 N. E.2d 562 (1964).
 
 
 81
 Reversed and remanded for jury trial.
 
 
 
 Notes:
 
 
 [1]
 Comment, Discernible Objects and Sudden Foreshortening: Judicial Gloss on the Ohio Assured-Clear-Distance-Ahead Statute, 36 U.Cin.L.Rev. 449, 460 (1967)
 
 
 [2]
 In Colby v. Long, 289 F.2d 137 (6th Cir. 1961), Judge (now Chief Judge) Weick wrote the opinion for this court in an action brought by a passenger for injuries sustained when the automobile in which he was riding crashed into an unlighted truck. He held that the nature of the object and its discernibility were such as to bar the driver's recovery because of his contributory negligence, but that his contributory negligence could not be imputed to the passenger as a matter of law, and reversed the passenger's case for jury trial
 
 
 [3]
 The dissent relies principally upon theCapelle case. Capelle, however, was decided as a matter of law after full development of the facts in a jury trial. The facts relied upon by the Ohio Supreme Court included the fact that the railroad crossing concerned was in "open country" and presented "no unusual or hazardous conditions."
 
 
 [4]
 Colonial Trust Co. v. Elmer C. Breuer, Inc., 363 Pa. 101, 69 A.2d 126 (1949)
 
 
 
 82
 WEICK, Chief Judge (dissenting).
 
 
 83
 In my view the majority has not correctly applied the well-settled law of Ohio, and I respectfully dissent.
 
 
 84
 The rule denying recovery in a case like the present one was clearly established by the Supreme Court of Ohio in Capelle v. Baltimore & Ohio R. R., 136 Ohio St. 203, 24 N.E.2d 822 (1940). The Court held:
 
 
 85
 "In general, a person who drives, or is driven, into the side of a railroad train standing or moving over a grade crossing cannot, in the absence of special circumstances rendering the crossing peculiarly hazardous, recover from the railroad company for injuries received thereby." (Italics mine) (Syl. 2)
 
 
 86
 In Capelle the railroad was engaged in a switching operation in which a boxcar had blocked a grade crossing. Plaintiff was a passenger in the automobile which collided with the boxcar. The accident happened on a dark night and there were traces of mist and fog in the air. The driver of the auto was familiar with the crossing. The Court further held:
 
 
 87
 "* * * [T]he existence of weather conditions tending to diminish visibility does not alter the rule." Id. at 207, 24 N.E.2d at 824.
 
 
 88
 The majority states that the negligence of the driver of the auto may not be imputed to the passengers under Ohio law. There was no such issue in the present case. On the contrary, the railroad contended that the negligence of the driver was the sole proximate cause of the collision.
 
 
 89
 In Capelle the Supreme Court of Ohio held that the negligence of the driver was the sole proximate cause of the collision as a matter of law. The Court said:
 
 
 90
 "* * * [T]he conclusion is inescapable that, as a matter of law, Roberts, the driver, was negligent and such negligence was the proximate cause of appellant's injuries." Id. at 210, 24 N.E.2d at 825.
 
 
 91
 The majority states that the boxcar "had been left stopped over the crossing without any necessity for this being done." The undisputed proof showed that the railroad was engaged in a switching operation, in the course of which a boxcar blocked the crossing for not more than two or three minutes. This ruling of the majority conflicts with Capelle, where the crossing was blocked for twenty minutes, and the Court approved it. The Supreme Court of Ohio (in Capelle) said:
 
 
 92
 "Undoubtedly the train had a right to occupy the crossing for legitimate business purposes, and was placed in the position best adapted to accomplish the work to be performed in conformity with standard railroad practice." Id. at 210, 24 N.E.2d at 825.
 
 
 93
 Furthermore, the blocking of the crossing was held in Capelle to be merely a condition and not a cause of the collision. In its fourth syllabus, the Court held:
 
 
 94
 "Where a motor vehicle is run into a train which has occupied a crossing for a period of time in excess of the limit prescribed by statute or ordinance, such occupancy is generally to be regarded as a condition only, and not as a cause of the collision."
 
 
 95
 The driver of the auto in our case violated the Ohio assured clear distance statute, Ohio Rev.Code § 4511.21. He was guilty of negligence as a matter of law. Capelle v. Baltimore & Ohio R. R., supra.
 
 
 96
 The driver also violated Ohio Rev. Code § 4513.15 relative to lights, which required him to "use a distribution of light or composite beam directed high enough and of sufficient intensity to reveal persons, vehicles and substantial objects at a safe distance in advance of the vehicle. * * *" Had he complied with this statute, he surely should have been able to see a boxcar, which was certainly a substantial object. It is not our concern that the Ohio courts have adopted the "strictest" construction of their safety statutes. This is the province of the state courts whose decisions we are supposed to follow in a diversity case. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 97
 Capelle was followed in Canterbury v. Pennsylvania R. R., 158 Ohio St. 68, 107 N.E.2d 115 (1952), in an opinion written for the Court by the late Judge James Garfield Stewart.
 
 
 98
 Another departure from the holdings of the Supreme Court of Ohio is the ruling of the majority that the question of whether the grade crossing was so "peculiarly hazardous" as to require extrastatutory warnings is for the jury to decide.
 
 
 99
 The highway in the present case was paved to a width of eighteen feet and was a straight, level road for a distance of at least six hundred feet in the direction the auto was traveling as it approached the crossing. The evidence in this case is certainly not sufficient to permit a jury to speculate as to whether the crossing was "peculiarly hazardous."
 
 
 100
 The rule in Ohio was established in Hood v. New York, Chicago & St. Louis R. R., 166 Ohio St. 529, 144 N.E.2d 104 (1957), where the Court held:
 
 
 101
 "A railroad is under no duty to provide extrastatutory warnings at a grade crossing, where such warnings are not required by any order of the Public Utilities Commission, if there is no substantial risk that a driver in the exercise of ordinary care may be unable to avoid colliding with a train that is being operated over the crossing in compliance with statutory requirements." (Syl. 6)
 
 
 102
 "Where reasonable minds cannot conclude that there is such a substantial risk, it is error to permit a jury to consider whether a railroad had a duty to provide extrastatutory warnings." (Syl. 7)
 
 The Court said:
 
 103
 "In determining what, in addition to compliance with statutory and commission regulations, the exercise of ordinary care may require of a railroad at a grade crossing, the railroad should be able to assume that those who drive over the railroad's `right of way' at that crossing will do so in the exercise of ordinary care." Id. at 535-536, 144 N.E.2d at 109.
 
 
 104
 In the present case the driver of the auto was not in the exercise of ordinary care. He did not appeal from the judgment of the District Court dismissing his action for personal injuries. The railroad was not required to anticipate that a negligent driver would violate the statutes of Ohio and drive into the side of a boxcar.
 
 
 105
 Hood was followed by our Court in Carufel v. C. & O. Ry., 286 F.2d 193 (1961), in an opinion written by Judge Cecil.
 
 
 106
 Hood was also followed by two Ohio Appellate decisions, both of which held as a matter of law that there was not sufficient evidence that the crossing was unusually hazardous so as to permit the issue to go to the jury. Easterwood v. New York, Chicago & St. Louis R. R., 108 Ohio App. 425, 162 N.E.2d 487 (1958), and Gigliotte v. New York, Chicago & St. Louis R. R., 107 Ohio App. 174, 157 N.E.2d 447 (1958).
 
 
 107
 Actually, the negligent driver of the automobile needed no statutory or extrastatutory warning of the existence of the crossing because he had lived in the little town of Xenia since he was nine years of age and was familiar with it. He was thirty-four years old at the time of the accident.
 
 
 108
 Prior to the accident the driver had visited four taverns in Xenia, between the hours of eight o'clock P.M. and one o'clock A.M. He admitted drinking only beers, but did not remember how many. One of his companions named Butts admitted drinking eleven beers. All of the passengers had been drinking. The driver's memory was vague in many other particulars. The driver left the last tavern at about one o'clock A.M. He estimated his speed at 25 to 35 miles an hour. He did not see anything ahead of him until an instant before he collided with the boxcar.
 
 
 109
 As stated in Hood, there was no duty on the part of the railroad to anticipate that a negligent driver would collide with a large boxcar which was not moving at the time.
 
 
 110
 Summary judgment may be granted when viewing the evidence in the light most favorable to the plaintiffs, the District Judge would have been required to direct a verdict in favor of the defendant if the case had gone to trial before a jury. Wilcox v. Transamerican Freight Lines, Inc., 371 F.2d 403, 405 (6th Cir. 1967); Aetna Ins. Co. v. Loveland Gas & Elec. Co., 369 F.2d 648 (6th Cir. 1966).
 
 
 111
 The testimony of the driver and of all important witnesses is contained in depositions. We cannot assume that they will testify differently if the case is retried. In my opinion, considering all the evidence in the light most favorable to the plaintiffs, reasonable minds could reach but one conclusion, namely, that the driver was negligent and his negligence was the sole proximate cause of the collision. Capelle v. Baltimore & Ohio R. R., supra.
 
 In Ohio the Supreme Court has held:
 
 112
 "It is just as pernicious to submit a case to a jury and permit the jury to speculate with the rights of citizens when no question for the jury is involved, as to deny to a citizen his trial by jury when he has the right." Syl. 8, Peters v. B & F Transfer Co., 7 Ohio St.2d 143, 219 N.E.2d 27 (1966).
 
 
 113
 I would affirm the judgment of the District Court.